1  Bernard C. Jasper (SBN: 118479)
   Thomas D. Georgianna (SBN: 242115)
2  **HORWITZ, CRON & JASPER**
   Four Venture, Suite 390
3  Irvine, CA 92618
   Phone:  (949) 450-4942
4  Facsimile:  (949) 453-8774
   bjasper@hclaw.biz
5
   Attorneys for Plaintiff MICHAEL HARTLEIB
6

9            **UNITED STATES DISTRICT COURT**

10         **CENTRAL DISTRICT OF CALIFORNIA**

11               **SOUTHERN DIVISION**

12

   MICHAEL HARTLEIB,                    | Case No.  SACV08-00790 CJC  (ANx)
13
                        Plaintiff,
14
           v.                          | VERIFIED FIRST AMENDED
15                                       COMPLAINT FOR VIOLATIONS OF THE
   SIRIUS SATELLITE RADIO INC.,          FEDERAL RACKETEER INFLUENCED
16 JOSEPH P. CLAYTON, MEL                AND CORRUPT ORGANIZATIONS ACT,
   KARMAZIN, LEON D. BLACK, JAMES        BREACH OF FIDUCIARY DUTY, AND
17 F. MOONE, MICHAEL J. MCGUINESS,       THE SHERMAN ACT
   WARREN N. LIEBERFARB, JAMES P.
18 HOLDEN, LAWRENCE F. GILBERTTI,
   XM SATELLITE RADIO HOLDINGS,
19 INC., GARY M. PARSONS, HUGH
   PANERO, NATHANIAL A. DAVIS,
20 THOMAS J. DONOHUE, RANDALL T.
   MAYS, RANDY S. SEGAL, JACK
21 SHAW, RAJENDRA SINGH, RONALD L.
   ZARRELLA, STELIOS PATSIOKAS,
22 HEINZ STUBBLEFIELD, JOSEPH M.
   TITLEBAUM, JOHN R. WORMINGTON,
23 INTEROPERABLE TECHNOLOGIES LLC,
   MICHAEL LEDFORD, DAVID FREAR,
24 PATRICK DONNELLY, MICHAEL
   DELUCA,
25
26                    Defendants.

27

28               **COMPLAINT**

   H:\HARTLEIB, Michael (0318)\Sirius XM Merger Litigation (.02)\Pleadings\First Amended Complaint\First Amended Complaint 10-27-08.doc

                        1

1   Plaintiff Michael Hartleib, ("Plaintiff" or "Hartleib") by

2   his attorneys, HORWITZ, CRON & JASPER, for his Complaint against

3   defendants, SIRIUS SATELLITE RADIO INC., JOSEPH P. CLAYTON, MEL

4   KARMAZIN, LEON D. BLACK, JAMES F. MOONE, MICHAEL J. MCGUINESS,

5   WARREN N. LIEBERFARB, JAMES P. HOLDEN, and LAWRENCE F. GILBERTTI,;

6   XM SATELLITE RADIO HOLDINGS, INC., GARY M. PARSONS, HUGH PANERO,

7   NATHANIAL A. DAVIS, THOMAS J. DONOHUE, RANDALL T. MAYS, RANDY S.

8   SEGAL, JACK SHAW, RAJENDRA SINGH, RONALD L. ZARRELLA, STELIOS

9   PATSIOKAS, HEINZ STUBBLEFIELD, JOSEPH M. TITLEBAUM, JOHN R.

10   WORMINGTON, INTEROPERABLE TECHNOLOGIES LLC, MICHAEL LEDFORD, DAVID

11   FREAR, PATRICK DONNELLY, MICHAEL DELUCA, alleges the following:

12   **JURISDICTION AND VENUE**

13   1.   This Court has jurisdiction over the claims for relief

14   under § 1964 of Title 18 (RICO), United States Code; by § 1 and 2

15   of Title 15, United States Code (Sherman Act) by §§ 15 and 22 of

16   Title 15, United States Code (Clayton Act); by § 1331 of Title

17   28, United States Code (federal question);by § 1332 of Title 28,

18   United States Code (diversity jurisdiction);by § 1337 of Title

19   28, United States Code (regulation of commerce); and by § 1367 of

20   Title 28, United States Code (supplemental jurisdiction). The

21   amount in controversy, exclusive of interest and costs, exceeds

22   the jurisdictional minimum of this Court.

23   2.   Personal jurisdiction and venue are predicated upon §

24   1965(a) and (b) of Title 28, United States Code; § 1391(b) and

25   (d) of Title 18, United States Code; § 22 of Title 15, United

26   States Code; and California Code of Civil Procedure § 410.10.

27   Many of the acts alleged were made in or to locations in this

28   District.   Defendants Sirius and XM have a substantial presence

1 | in this District.

2 | 3. In connection with the acts alleged in this complaint,
3 | defendants, directly or indirectly, used the means and
4 | instrumentalities of interstate commerce, including, but not
5 | limited to, the mails, interstate telephone communications, the
6 | Internet, and the facilities of the national securities markets.
7 | The conspiracy alleged in this complaint spans multiple
8 | districts. Due to the fact that individuals believed to be
9 | domiciled in New York, and which Hartleib believes discovery will
10 | show are co-conspirators with Defendants, there is no other
11 | District which could assume jurisdiction over all defendants.

12 | **PRELIMINARY STATEMENT**

13 | 4. This is an action to recover treble damages, costs, and
14 | attorney's fees for violations of the Federal Racketeer
15 | Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et
16 | seq. ("RICO Act"); for violations of the officers and directors
17 | fiduciary duties to the corporation and its shareholders
18 | ("Fiduciary Violations"); and violations of 15 U.S.C. §§ 1 and 2
19 | ("Sherman Act").

20 | 5. Claims brought derivatively on behalf of Sirius
21 | Satellite Radio Inc. by shareholder Michael Hartleib include
22 | those for Racketeering, Anti Trust violations and breach of
23 | fiduciary duty by the directors and officers of Sirius Satellite
24 | Radio Inc. The direct claim against the controlling shareholders
25 | of Sirius Satellite Radio Inc. is for breach of fiduciary duty.
26 | The controlling shareholders used information not shared with
27 | Michael Hartleib in such a way to cause him to be injured in a
28 | way that they were not.

6.   Defendants conspired to mislead the shareholders of Sirius Satellite Radio Inc., disregard an FCC mandate, stifle competition, and retard the growth of the satellite radio industry in order monopolize the industry. The conspiracy successfully caused Sirius Satellite Radio Inc. and XM Satellite Radio Holdings, Inc. to merge on or about June 29, 2008.  On that date, Sirius Satellite Radio Inc. acquired XM Satellite Radio Holdings, Inc. in a stock swap.  Prior to closing, the merger was described as a "merger of equals" by management.  However, as a result of the merger, Sirius Satellite Radio Inc. took on approximately $620 million in debt from XM Satellite Radio Holdings, Inc.  The individual Board of Directors ("Board") and officers of Sirius Satellite Radio Inc. refinanced the debt on such bad terms that the merger severely damaged the value of Sirius Satellite Radio Inc.

7.   The Board and officers of Sirius Satellite Radio Inc. grossly mismanaged its operations by engaging in reckless financing of the merger with XM Satellite Radio Holdings, Inc. The Board and officers of Sirius Satellite Radio Inc. ignored warning signs that the merger with XM Satellite Radio Holdings, Inc. would severely damage Sirius Satellite Radio Inc.  Shares of Sirius Satellite Radio Inc. traded at approximately $2.00 per share prior to the merger, but are now trading at approximately $0.29 per share.

8.   Various officers and directors of Sirius Satellite Radio Inc. were aware of the problems that financing Sirius Satellite Radio Inc.'s debts would cause and either sold, or pre-arranged scheduled sales of their shares in order to avoid the

1  loss which they knew or suspected would be inflicted on Sirius
2  Satellite Radio Inc.

3  　　　9.   Defendants knowingly and purposefully refused to comply
4  with an FCC mandate requiring Sirius Satellite Radio Inc. and XM
5  Satellite Radio Holdings, Inc. to release interoperable radios
6  that could receive the satellite radio signal of both companies.
7  Without an interoperable radio, the only way to switch between
8  signals of Sirius Satellite Radio Inc. and XM Satellite Radio
9  Holdings, Inc. is to switch radios, or acquire two radios.
10 Physically switching radios is a substantial and costly deterrent
11 to switching services, particularly in the case of an automobile
12 where there are additional installation fees and the issue of
13 dashboard compatibility.  Defendants used this deterrent effect
14 to charge higher rates for their services – there was no
15 realistic source of competition that subscribers could turn to.
16 However, this strategy was extremely short sighted.

17 　　　10.  Sirius Satellite Radio Inc. lost the opportunity to
18 expand its market to people who would be attracted by the
19 combined programming of XM Satellite Radio Holdings, Inc. and
20 Sirius Satellite Radio Inc., but not by the programming of either
21 company alone. Instead, as a result of the delay in deploying
22 interoperable radios, Sirius Satellite Radio Inc. and XM
23 Satellite Radio Holdings, Inc. have lost market share to other
24 competitors offering services over cellular devices and the
25 internet.  This intentional and reckless conduct, in combination
26 with the financing of the merger, caused severe damage to Sirius
27 Satellite Radio Inc.

28 　　　11.  HARTLEIB did not make a pre-suit demand on the Board

1  because such an act would be futile.  As set forth in further

2  detail below, the Board is entrenched and the directors are

3  marred with conflicts of interest.  Hartleib made numerous

4  demands that the merger be aborted and in fact attempted to stop

5  it.  In addition, the Board's failure to put the financial

6  interests of Sirius Satellite Radio Inc. ahead of their own

7  interests is evidence that the Board will not take any action

8  against itself or its colleagues and friends.  To remedy the

9  boards malfeasance and breaches of fiduciary duty, HARTLEIB

10 brings this action on behalf of Sirius Satellite Radio Inc.

11 **PARTIES AND RELATED NON-PARTIES**

12     12.  Plaintiff Michael Hartleib is, and at all times

13 relevant was, owner of approximately 102,000 common shares of

14 Sirius' voting stock issued and outstanding.

15     13.  Corporate Defendants (sometimes referred to in the

16 collective as the "Corporate Defendants" or individually as

17 "Corporate Defendant") are: Sirius Satellite Radio Inc., a

18 Delaware corporation and its subsidiaries ("Sirius"); XM

19 Satellite Radio Holdings, Inc., a Delaware corporation and its

20 subsidiaries ("XM"); Interoperable Technologies LLC, a Florida

21 limited liability company and its subsidiaries ("Interoperable

22 Technologies").  The Individual Defendants are: the officers and

23 directors of Sirius (JOSEPH P. CLAYTON, MEL KARMAZIN, LEON D.

24 BLACK, JAMES F. MOONE, MICHAEL J. MCGUINESS, WARREN N.

25 LIEBERFARB, JAMES P. HOLDEN, and LAWRENCE F. GILBERTTI

26 collectively "Individual Sirius Defendants" or "Individual

27 Defendants"); the officers and directors of XM; (GARY M. PARSONS,

28 HUGH PANERO, NATHANIAL A. DAVIS, THOMAS J. DONOHUE, RANDALL T.

1  MAYS, RANDY S. SEGAL, JACK SHAW, RAJENDRA SINGH, RONALD L.

2  ZARRELLA, STELIOS PATSIOKAS, HEINZ STUBBLEFIELD, JOSEPH M.

3  TITLEBAUM, and JOHN R. WORMINGTON collectively "Individual XM

4  Defendants" or "Individual Defendants"); the managers of

5  Interoperable Technologies (MICHAEL LEDFORD, DAVID FREAR, PATRICK

6  DONNELLY, MICHAEL DELUCA STELIOS PATSIOKAS, JOSEPH TITLEBAUM,

7  collectively "Individual Interoperable Technologies Defendants"

8  or "Individual Defendants").

9  <center>**STATEMENT OF FACTS**</center>

10  **A.   Pattern of Racketeering Activity**

11      14.  Hartleib re-alleges and incorporates herein by reference

12  each of the foregoing paragraphs and further alleges as follows:

13      15.  Hartleib is a person within the meaning of 18 U.S.C.

14  §1964(c) and at all relevant times, Hartleib and each of the

15  Defendants were persons within the meaning of 18 U.S.C. §1961(3).

16      16.  For purposes of 18 U.S.C. §§1961(3) and 1962(a) through

17  (d), the enterprise at issue is an association-in-fact of the

18  Defendants together with as of yet unknown co-conspirators - "the

19  Enterprise."

20      17.  The Defendants conducted or participated in the conduct

21  of the Enterprise's affairs through a pattern of racketeering

22  activity and worked together to orchestrate and receive the

23  benefits of their predicate acts in violation of U.S.C. §1962(a)

24  through (d), and conspired to violate 18 U.S.C. §1962(c) and (b).

25      18.  Additional wrongdoers that may be part of the

26  Enterprise include those employees, officers and agents of the

27  Corporate Defendants and other entities or co-conspirators that

28  participated with the Enterprise in the acts complained of.

19.   In connection with the acts complained of in this complaint, the Enterprise, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, the Internet, e-mail, and the national securities markets.

20.   Sirius and XM are the nation's only Satellite Digital Audio Radio Service (SDARS) licensees. Their signal is heard throughout the United States and Canada.  Their subscribers pay for their services in the several states and in Canada. Accordingly, they are engaged in interstate and foreign commerce.

21.   In 1997, XM and Sirius were granted their respective Satellite Digital Audio Radio Spectrum ("SDARS") licenses by the Federal Communications Commission ("FCC" or "Commission").

22.   When the licenses were granted, Sirius and XM were prohibited by the FCC from combining their portions of SDARS Spectrum and required to jointly develop and provide to the public a satellite radio receiver capable of receiving the signals of both Sirius and XM, an "interoperable radio."  Both requirements were designed to foster competition and the benefits of competition including lower rates and a more developed industry.

23.   Each license was expressly conditioned on "their systems includ[ing] a receiver that will permit end users to access all licensed SDARS systems that are operational or under construction."  (The "interoperable mandate").

24.   Rather than deploying an interoperable radio, the individual Sirius and XM defendants, and XM agreed upon a plan to merge to thwart both FCC requirements.  This agreement

8

1  constitutes the initial formation of the Racketeering Enterprise
2  constituted by the individual Defendants, XM, and eventually,
3  Interoperable Technologies.

4      25.  Beginning on or before January 2002, the Individual
5  Sirius and XM defendants began work on a plan to combine their
6  respective portions of the SDARS Spectrum. Their objective was to
7  monopolize SDARS.

8      26.  Defendants' plan to merge and evade the FCC
9  interoperable mandate was part of a twofold scheme.  The first
10 element of the scheme was to monopolize SDARS through merging XM
11 and Sirius.  The merger was to be accomplished by defrauding the
12 Shareholders of Sirius and the FCC of enforcement of FCC
13 regulations.  The second element was to maintain artificially
14 high rates for the subscriber services of Sirius and XM by
15 limiting competition between XM and Sirius.  Competition between
16 XM and Sirius was limited by defrauding the Shareholders of
17 Sirius and the FCC of enforcement of FCC regulations.

18     27.  Merger discussions began in 2001 but were called off
19 until 2006 when discussions began in earnest.

20     28.  These discussions resulted in Sirius and XM announcing
21 their entry into a Merger Agreement on February 17, 2007.

22     29.  The announcement of the merger was followed by
23 submission of applications to the FCC seeking approval of the
24 merger and, of necessity, removal of the prohibition against
25 combining their respective portions of the SDAR Spectrum each was
26 licensed to use.

27     30.  On February 16, 2000, the Individual XM and Sirius
28 defendants caused XM and Sirius to enter into a Joint Development

Agreement to develop the receiver allowing end users to access all licensed SDARS systems that are operational or under construction.

31.  As part of the Joint Development Agreement, XM and Sirius exchanged their respective proprietary information and intellectual property with each other and formed a joint venture owned and funded by XM and Sirius called "Interoperable Technologies LLC."  At this point, Defendants, by virtue of their plan and steps taken to execute their plan, had formed a formal organization for the commission of crimes in the form of a joint venture.

32.  The Joint Press Release issued by Sirius and XM (dated February 16, 2000) stated that the companies had  –

> … today announced an agreement to develop a unified standard for satellite radios.  The standard is expected to accelerate growth of the satellite radio category by enabling consumers to purchase one radio capable of receiving both companies' broadcasts. … The unified standard will represent a second generation of satellite radios.  All future agreements with automakers and radio partners will specify the new satellite radio standard."

33.  The Press Release quoted David Margolese, Chairman and CEO of Sirius and Hugh Panero, XM President and CEO in a joint statement that said, "This standard is good news both for the consumers and for the category. **This will allow for reduced subscriber acquisition costs, more satellite radios in the marketplace, and a simplified choice for consumers**."  The statement was issued.

34.   On October 6, 2000, the Individual Sirius and XM Defendants filed a letter with the FCC announcing their agreement to develop a unified standard for satellite radios and stated that interoperable chips capable of allowing end users to receive both XM's and Sirius' services would be produced in volume by mid-2004.

35.   In the Joint Development Agreement, the Defendants cited timelines (and specific dates) in which interoperable receivers would be introduced in the marketplace with numbers in the hundreds of thousands.

36.   Section 14.02 of the Joint Development Agreement expressly provides:  "Catastrophic Loss Backup. XM and Sirius shall negotiate in good faith with respect to an agreement to provide service to the other's subscribers in the event of a catastrophic failure of the XM Radio System or the Sirius Radio System".

37.   The Individual Sirius Defendants in their 2002 and 2003 SEC filings that they "were required to develop and deploy interoperable radios." (Emphasis added.)

38.   The 2004 10-K filed with the Securities and Exchange Commission ("SEC") for Sirius stated that under the Joint Development Agreement, any new agreements with automakers will be on a non-exclusive basis and will require that such automakers install radios capable of receiving both Sirius and XM Radio's satellite radio services as soon as such interoperable radios become available.

39.   According to an SEC S-4 (pp. 20-21) filed with the SEC in late 2002 and early 2003, representatives of Sirius contacted

1  representatives of XM, and despite the FCC's restriction imposed

2  on their licenses prohibiting them from combining said licenses,

3  engaged in discussions about the possibility of a business

4  combination between the two licensees (i.e., a merger).

5      40.  These initial merger discussions ended without any

6  agreement to merge.

7      41.  On information and belief, ceasing discussions of a

8  merger was due in part, to the fact that at this time Dish and

9  Direct TV, the two sole satellite TV providers, attempted a

10  merger whose approval was denied by the FCC and/or Department of

11  Justice ("DOJ") indicating that the regulatory environment for

12  approval of a merger of the only two satellite radio licensees

13  was unfavorable.

14      42.  On January 2, 2005, Thomas S. Tcyz, Chief of the FCC's

15  Satellite Division of its International Bureau, wrote a letter

16  asking the licensees to provide an updated status report of their

17  efforts to develop an interoperable radio receiver.

18      43.  The individual XM and Sirius Defendants responded to

19  Mt. Tcyz's letter with a joint letter dated March 14, 2005, a

20  copy of which was available through its on-line database.

21  Accordingly, the communication was made in California and

22  Washington, D.C.

23      44.  However, on information and belief, this letter was

24  deliberately removed from that database.

25      45.  A photocopy of this letter, stamped "RECEIVED MAR 14

26  2005" by the Federal Communication Commission Office of Secretary

27  is attached hereto as **Exhibit A.**

28      46.  The letter states in pertinent part:

12

"XM and Sirius jointly submit this letter in response to your request, and reconfirm their compliance with Section 25.144(a)(3)(ii) of the Commission's rules by including interoperable radios in their respective system designs… [The companies have] spent nearly five million dollars to fund the efforts to develop interoperable chip sets and expect to spend more in the future. Both Sirius and XM are optimistic that, **at a minimum, a prototype for this type of interoperable radio (i.e., a receiver using a common antenna, a common RF tuner, and two baseband modules, one for XM and one for Sirius) will be completed by the joint venture in 2005.**" (Emphasis added.)

47.   This letter, transmitted via mail or the wires, constitutes a false pretense and representation.  It was designed and intended to forestall FCC action and allow Defendants to charge artificially high rates for XM and Sirius services.  It was also designed and intended to fool the shareholders of Sirius into believing that the deployment of an interoperable radio to the public (and thus an expansion of Sirius' market) was in the immediate future and to hold on to their shares.  In fact, it was the intent of the individual Defendants, XM and Interoperable Technologies to delay compliance with the interoperable mandate as long as possible.

48.   On April 16, 2007, the FCC granted Sirius an authorization for a new satellite radio receiver, the FM-5, Call Sign S2710, stating:  "The authority granted herein to operate Sirius FM-5 is without prejudice to any action that the Commission may take regarding Sirius's compliance with the

1 | requirement that its system include a receiver that will permit
2 | end users to access all licensed SDARS systems that are
3 | operational or under construction."

4 |     49.  In the transcript of a conference call to analysts
5 | and/or shareholders, David Frear, Chief Financial Officer of
6 | Sirius and a Manager of Interoperable Technologies LLC, is
7 | recorded as stating that in early 2006, Interoperable
8 | Technologies announced:

9 |     Interoperable Technologies, founded in 2003, is in the
10 |     process of designing and architecting these dual-mode
11 |     satellite radios, with the help of regular consultations
12 |     from both XM and Sirius.  In 2005 they successfully
13 |     completed the design of a radio capable of receiving both
14 |     services, and have a timeline to bring a receiver to market
15 |     this year.

16 |     50.  This call (believed to have been made to locations in
17 | New York, Washington, D.C. and California) was transmitted over
18 | the wires, and constitutes a false pretense and representation.
19 | It was designed and intended to forestall FCC action and allow
20 | Defendants to charge artificially high rates for XM and Sirius
21 | services.  It was also designed and intended to fool the
22 | shareholders of Sirius into believing that the deployment of an
23 | interoperable radio to the public (and thus an expansion of
24 | Sirius' market) was in the immediate future and to hold on to
25 | their shares.  In fact, it was the intent of the individual
26 | Defendants, XM and Interoperable Technologies to delay compliance
27 | with the interoperable mandate as long as possible.

28 |     51.  The portion of the transcript of Mr. Frear's foregoing

1   comments regarding Interoperable Technologies' work on
2   interoperability appears to have been subsequently removed from
3   public access.

4        52.   Interoperable Technologies also announced on its web
5   site that these combined services would be available for $26.00
6   per month.  This communication was in part targeted to and made
7   to individuals in this District.  It is believed to have
8   originated in Florida where Interoperable Technologies has its
9   principle place of business.

10       53.   This communication, transmitted over the wires,
11  constitutes a false pretense and representation.  It was designed
12  and intended to forestall FCC action and allow Defendants to
13  charge artificially high rates for XM and Sirius services.  It
14  was also designed and intended to fool the shareholders of Sirius
15  into believing that the deployment of an interoperable radio to
16  the public (and thus an expansion of Sirius' market) was in the
17  immediate future and to hold on to their shares.  In fact, it was
18  the intent of the individual Defendants, XM and Interoperable
19  Technologies to delay compliance with the interoperable mandate
20  as long as possible.

21       54.   Interoperable Technologies' web site was temporarily
22  shut down shortly after this information made its way to public
23  forums on the Internet, such as *Orbitcast* and *Satellite Standard*
24  *Group.*

25       55.   Then Interoperable Technologies LLC posted the following
26  statement   on   its   web   site,   on   information   and   belief,
27  intentionally doing so without a date, but apparently in 2006 or
28  2007:

15

1    It is acknowledged that SIRIUS, XM and their manufacturing

2    partners already produce receivers that permit end users to

3    access all Satellite Digital Audio Radio systems in

4    compliance with FCC interoperability obligations.

5    Furthermore, there currently is no assurance that the XM or

6    Sirius manufacturing partners will build dual-mode radios,

7    that they will be cost competitive, or that any significant

8    market for dual-mode radios will develop. Even so,

9    Interoperable Technologies stands to develop the opportunity

10   for dual-mode satellite radio technology. (Emphasis added.)

11   56.   The statement is still visible on the web at:

12   www.selectsatelliteradio.com/about_us.html.

13   57.   This statement confirms that the companies were

14   technically capable of complying with the interoperability

15   mandate's requirement that the dual use radios be deployed, but

16   elected to not introduce these radios into the marketplace. Not

17   only was this action in violation of the FCC mandate, but it had

18   the effect of extending the period during which there was only

19   limited competition between the two companies.  It appears

20   intended to simultaneously give lip service to compliance with

21   the interoperable mandate, but at the same time, provide some

22   sort of excuse as to why radios (as opposed to receivers?) are

23   not on the market.  This communication was in part targeted to

24   and made to individuals in this District.  It is believed to have

25   originated in Florida where Interoperable Technologies has its

26   principle place of business.  This statement, transmitted on the

27   wires, constitutes a false pretense and representation.  It was

28   designed and intended to forestall FCC action and allow

Defendants to charge artificially high rates for XM and Sirius services. It was also designed and intended to fool the shareholders of Sirius into believing that the deployment of an interoperable radio to the public (and thus an expansion of Sirius' market) was in the immediate future and to hold on to their shares. In fact, it was the intent of the individual Defendants, XM and Interoperable Technologies to delay compliance with the interoperable mandate as long as possible.

58. The statement that no significant market for dual mode radios will develop is factually incorrect.

59. Certain auto manufacturers, such as Nissan, requested an interoperable device to lessen the confusion to their customers and resolve potential inventory problems.

60. In another example, on January 1, 2007, consumers who previously purchased XM radio for NASCAR coverage were forced to purchase new equipment and switch services to enable them to continue to receive NASCAR coverage after Sirius acquired these broadcast rights.

61. On July 2, 2007, Mel Karmazin, Sirius' CEO, in an exclusive interview with TWICE stated:

The opportunity exists for us to commercially market an interoperable radio. Right now we have developed it. There's one in my office right now, which is an interoperable radio, which is a receiver that in essence has an XM component and a Sirius component sort of Velcro-ed together. So we developed that, and one of the things that we have the opportunity to do is to market it into retail stores as an interoperable radio, one

(NASDAQ:ROIA) that would be priced attractively and be able to get the consumer both services. A radio that gets the best of both services is sort of attractive and again enables the two companies to not water each other down but to have a stronger service while competing with all of these other technologies. TWICE, July 2, 2007. (Emphasis added.)

62.   This statement is misleading and deceptive.  It was designed to forestall FCC and DOJ regulatory action, by creating the appearance that the deployment of interoperable radios would occur in the immediate future.  Of course such a deployment did not occur.  This communication was in part targeted to and made to individuals in this District.  It is believed to have originated in New York.  This statement, transmitted on the wires (TWICE.com is a web site), constitutes a false pretense and representation.  It was designed and intended to forestall FCC action and allow Defendants to charge artificially high rates for XM and Sirius services.  It was also designed and intended to fool the shareholders of Sirius into believing that the deployment of an interoperable radio to the public (and thus an expansion of Sirius' market) was in the immediate future and to hold on to their shares.  In fact, it was the intent of the individual Defendants, XM and Interoperable Technologies to delay compliance with the interoperable mandate as long as possible.

63.   According to Sirius' Proxy Statement (created by The Individual Sirius Defendants), page 20, paragraph 3, in early 2006, Sirius contacted XM and renewed its proposal to discuss "a variety of topics of interest to the two companies" including a

1  merger with XM.

2      64.   XM then informed its board of directors of the
3  possibility of merger discussions with Sirius. Id.

4      65.   Over the next several months, the Individual Sirius and
5  XM Defendants engaged experts to conduct due diligence on the
6  potential of a business combination between XM and Sirius.  Id.

7      66.   On February 19, 2007, the Individual Sirius and XM
8  Defendants caused XM and Sirius to enter into an Agreement and
9  Plan of Merger ("Merger Agreement").

10      67.   Pursuant to this Merger Agreement, on March 20, 2007,
11  the Individual Sirius and XM Defendants submitted applications to
12  the FCC seeking consent to transfer control of Commission
13  licenses and authorizations held by Sirius, XM, and their
14  subsidiaries pursuant to Section 310(d) of the Communications Act
15  of 1934, as amended, and waiver of the restriction on combining
16  their licenses or alternatively a declaration that due to changed
17  circumstances the restriction was no longer operative.

18      68.   On or about June 29, 2008, the merger between Sirius
19  and XM was consummated.  XM was merged with Vernon Merger
20  Corporation, as subsidiary of Sirius created for the merger.
21  Each share of XM stock was replaced with 4.6 shares of Sirius
22  stock.  Sirius then changed its name to "Sirius XM."  As a
23  result, Sirius bought $620 million in debt.  At the time of the
24  merger, the stock price of Sirius traded at approximately $2.00
25  per share.  It currently trades at approximately $0.29 per share.
26  The $620 million in debt is due in early 2009.  Given the current
27  state of the credit market, it is expected that the Sirius will
28  be forced to refinance the debt on even worse terms, and that

current shareholders will be further diluted.  As Sirius had approximately 1.45 billion shares outstanding prior to the merger, Sirius suffered approximately $2.48 billion in damage.

69.  In approving the merger, the DOJ revealed that it too had been a target of Defendants' efforts to defraud Sirius shareholders from effective regulation.  Thomas O. Barnett, assistant attorney general, announced the DOJ decision by saying "In several important segments of their business, with or without the merger, the parties simply do not compete today and therefore the merger would not be eliminating any competition between them."  Accordingly, not only were the communications referred to above designed to forestall FCC action, they also were designed to allow the Defendants to bootstrap the merger past DOJ regulations: 1) the DOJ approved the merger, in substantial part because there was no competition that would be eliminated by the merger and resulting monopoly; and 2) there was no competition to begin with because the Defendants' evaded the Interoperable Mandate.

70.  Defendants' misleading of the government has attracted congressional scrutiny: on or about June 10, 2008, Senator Sam Brownback requested that Senate Judiciary Committee Chairman Patrick Leahy release information provided to the FCC but which remains subject to a confidentiality order.  Senator Brownback's motivation is to determine whether the testimony of Defendant Mel Karmazin to Congress about efforts to deploy interoperable radios is truthful.  Senator Brownback stated that he is "very troubled by the notion that Congress may have been misled in its prior hearings on this merger."

71. The individual Sirius and XM defendants and XM received income from artificially high subscription fees as a result of their evasion of the interoperable mandate (a risky, short-sighted, and ill-fated gamble).  The Individual Sirius Defendants used the income and proceeds from the artificially high subscription fees to invest in and acquire XM and full control of Interoperable Technologies via Sirius.  This transaction may be characterized as an investment in and an acquisition of an interest in an enterprise which is engaged in and affecting interstate and foreign commerce.  The investment itself caused injury to the shareholders of Sirius apart from the mail and wire fraud which the enterprise engaged in (which forestalled FCC and DOJ regulatory enforcement).  As a result of the Individual Sirius Defendants' acquisition of XM, the shareholders of Sirius sustained at least $620 million in damage.

72. All of the Defendants conspired to carry out the acts alleged above.  The individual Sirius XM and Interoperable defendants are the management and leaders (i.e., directors, officers, members, etc.) of XM, Sirius and Interoperable Technologies who have directed the affairs of the Racketeering Enterprise.

**B.   Breach of Fiduciary Duty (Derivative)**

73.   Hartleib re-alleges and incorporates herein by reference each of the foregoing paragraphs and further alleges as follows:

74. The officers and directors of Sirius owe its shareholders the duty of care, loyalty and good faith.

75.   There are a substantial number of potential subscribers who would be induced to subscribe to the combined services of Sirius and XM, but not to the service of either service alone. Defendants' refusal to release interoperable radios to the public deprived Sirius of a golden opportunity to expand its market share.  Instead it has lost ground to competitors offering similar services over the internet and via cellular devices.

76.   In  pursuing  a  plan  to  merge  rather  than  provide interoperable  radios,  the  Individual  Sirius  Defendants  violated their  fiduciary  duties  of  care,  loyalty  and  good  faith.   The Individual  Sirius  Defendants  had  no  consideration  in  sight immediately  before  the  merger – there  was  no  value  to  be  obtained for  Sirius  through  the  merger.   In  the  circumstances  immediately before  the  merger,  the  transaction  was  not  worth  while  and  was not  made  in  a  good  faith  effort  to  advance  the  corporate interests  of  Sirius.   Instead  the  plan  to  merge  and  evade  the interoperable  mandate  intentionally  and  recklessly  put  the interests  of  a  criminal  enterprise  ahead  of  the  interest  of Sirius.

77.   Immediately  before  the  merger,  the  Individual  Sirius Defendants  knew  or  should  have  known  that  XM  had  approximately $620  million  in  debt.   Immediately  before  the  merger,  the Individual  Sirius  Defendants  knew  or  should  have  known  that  the credit  markets  were  worsening  and  the  prospects  of  acquiring acceptable  financing  for  the  merger  had  evaporated.   Immediately before  the  merger,  the  Individual  Sirius  Defendants  knew  or should  have  known  that  the  merger  would  not  provide  any  value  to Sirius,  but  instead  would  severely  damage  Sirius.

22

78.  The Individual Sirius Defendants totally disregarded their duty to ensure that shareholders would receive value in the merger with XM.

79.  The Directors and Officers of Sirius also violated their fiduciary duties to their respective shareholders by the following acts and/or omissions:

Failing to disclose all relevant and material facts important to shareholder decisions on voting for or against the merger, and/or whether to pursue independent appraisal of share value;

Failing to seek shareholder approval to form a committee of independent directors and advisors to evaluate strategic alternatives rather than disclosing after the fact that management had retained Morgan Stanley & Co. Incorporated and JP Morgan Securities Inc. as financial advisors that agreed to be paid only if the merger was consummated and subject to Sirius and its Board of Directors' agreeing to indemnify these advisors against claims of conflicts of interest, to wit:

In its October 3, 2007 Proxy shareholders were first advised that an agreement had been made with Morgan Stanley & Co. Incorporated and that in a letter dated February 18, 2007, Morgan Stanley informed Sirius' Board of Directors as follows:

Pursuant to the terms of the engagement letter with

Morgan Stanley, SIRIUS has agreed to pay Morgan Stanley a transaction fee of $10 million for services rendered in connection with the merger, which will be paid only if the merger is successfully completed.  Also, pursuant to the engagement letter, Morgan Stanley will be eligible to receive an additional fee of up to $7.5 million, payable at the sole discretion of the SIRIUS board of directors.  In the event the merger agreement is terminated, Morgan Stanley is entitled to receive 15% of any breakup fee paid to SIRIUS as a result of such termination, up to a maximum amount of $10 million.  In addition, SIRIUS has agreed to indemnify Morgan Stanley and its affiliates, their respective directors, officers, agents and employees and each person, if any, controlling Morgan Stanley or any of its affiliates against certain liabilities and expenses, including certain liabilities under the federal securities laws, related to or arising out of Morgan Stanley's engagement.

In its October 3, 2007 Proxy shareholders were first advised that an agreement had been made with JP Morgan Securities Inc. and that in a letter dated February 20, 2007, JP Morgan Securities informed XM Satellite Radio Holdings Inc.'s Board of Directors as follows:

We have acted as financial advisor to the Company with respect to the proposed Merger and will receive a fee

from the Company for our services, a substantial portion of which will become payable only if the proposed Merger is consummated. In addition, the Company has agreed to indemnify us for certain liabilities arising out of our engagement.

Failing to disclose that the merger was *not* a "merger of equals" but instead a purchase of $620 million in debt in a high risk, ill fated scheme to monopolize the SDARS spectrum.

Failing to ensure that the merger would result in Sirius' shareholders receipt of value.

Failing to ensure a fully independent valuation of the merger's exchange ratio of Sirius shares for XM shares.

Failing to disclose non-public information concerning the financial condition of Sirius and XM and the value to be realized by the potential synergies of the proposed merger including the merged entity's assets and prospects as a combined entity.

80.   The Individual Sirius Defendants used their positions and directors and officers to directly or indirectly exercise control over the wrongful acts set out in this complaint.

81.   The directors of Sirius failed to maintain a system of oversight to ensure that decisions were being made in the interests of the corporation and to prevent the acts alleged in

1   this complaint.

2       82.   The directors and officers of Sirius failed inform the

3   shareholders that their true intent was to delay the deployment

4   of interoperable radios as long as possible.

5       83.   The directors and officers of Sirius breached their

6   fiduciary duty of care, good faith and loyalty when they touted

7   the merger between XM and Sirius as a "merger of equals" before

8   the merger.   It was not a merger of equals, the directors and

9   officers of Sirius caused Sirius to purchase $620 million in

10  debt, which is due in early 2009, in what was at the time one of

11  the worst credit markets in history, and which showed every

12  probability of becoming the very worst credit market *ever*.   All

13  these facts were known or should have been known by the officers

14  and directors of Sirius.   The Individual Sirius Defendants were

15  able to carry out these acts to their own advantage because they

16  knew, years in advance, of the scheme to delay the deployment of

17  interoperable radios and the scheme to effect the merger of

18  Sirius and XM.   They also knew the true motivations for these

19  actions.   The Shareholders knew none of this information.

20  Accordingly these actions were taken to the benefit of the

21  Individual Sirius Defendants, and to the detriment of Sirius.

22      84.   The consummation of the merger constitutes an abuse of

23  corporate governance by the Individual Sirius Defendants because

24  it clearly contained no value for Sirius, was clearly set to

25  damage Sirius and yet the Individual Sirius Defendants falsely

26  touted the merger as a "merger of equals."   The Individual Sirius

27  Defendants were able to carry out these acts to their own

28  advantage because they knew, years in advance, of the scheme to

1  delay the deployment of interoperable radios and the scheme to

2  effect the merger of Sirius and XM.  They also knew the true

3  motivations for these actions.  The Shareholders knew none of

4  this information.  Accordingly these actions were taken to the

5  benefit of the Individual Sirius Defendants, and to the detriment

6  of Sirius.

7      85.  In order to insure that they were not effected by the

8  horrendous debt which Sirius bought in the merger, the Individual

9  Sirius Defendants either sold shares prior to the merger, or

10 arranged a schedule to sell shares prior to the merger, or abused

11 their positions to obtain excessive compensation and bonuses to

12 offset their losses in stock.  A compilation of insider

13 transactions reported on SEC Form 4 is attached hereto as **Exhibit**

14 **B**.  The data shows that Defendant Mel Karmazin (compensated

15 approximately $32.2 Million in 2007, and approximately $4.25

16 million in 2006) consistently purchased stock, but that the other

17 officers consistently sold stock for the three years prior to the

18 merger.  For these reasons, the Individual Sirius Defendants

19 breached their duties of loyalty and good faith.

20     86.  As a result of the manifold breaches of duty by the

21 Individual Sirius Defendants, Sirius has suffered approximately

22 $2.48 billion in damage.

23 **C.   Breach of Fiduciary Duty (Direct)**

24     87.  Hartleib re-alleges and incorporates herein by

25 reference each of the foregoing paragraphs and further alleges as

26 follows:

27     88. Because the Individual Sirius Defendants were also

28 controlling shareholders by virtue of their positions as

1   directors and officers of Sirius, and because of their selective

2   dissemination of information to the public, they owed a fiduciary

3   duty to the shareholders of Sirius.

4       89. The Individual Sirius Defendants breached their duties

5   to Hartleib for all of the reasons stated above.

6       90. Because the Individual Sirius Defendants knew of the

7   scheme to delay the deployment of interoperable radios, and

8   because they knew that the merger of Sirius and XM was not a

9   merger of equals, and because they told the public, including

10  Hartleib, that the merger was a merger of equals, the Individual

11  Sirius Defendants were not effected by the merger and the scheme

12  to delay deployment of interoperable radios in the same way that

13  Hartleib was.

14      91. As stated above, the Individual Sirius Defendants took

15  steps to ensure that they did not bear the same risks and did not

16  sustain the same injuries as did Hartleib.  Some of the

17  Individual Sirius Defendants, (such as Leon Black and Joseph

18  Clayton) unloaded stock prior to the merger via scheduled or

19  unscheduled sales.  Some Individual Sirius Defendants arranged an

20  excessive compensation to offset their stock positions.  Mel

21  Karmazin was compensated approximately $32.2 Million in 2007, and

22  approximately $4.25 million in 2006.

23      92. Hartleib however was not privy to the plan on delaying

24  the interoperable radios and trusted the Individual Sirius

25  Defendants when they claimed that the merger would be a merger of

26  equals, and that no further dilution of the shareholders would be

27  necessary.  Accordingly, Hartleib took no remedial measures to

28  avoid the sure damage that was to be caused by the merger or the

failure to expand market share.

93. As a result, Hartleib's 140,000 shares of Sirius lost approximately 85 percent of their value.  Stated another way, Hartleib lost $238,000.00 as a result of the merger.  Totaled, Hartleib's damages caused by the devaluation in share value is approximately $1,000,000.00.

94. Because Hartleib's damages are separate and distinct from those suffered by the controlling shareholders, his claims against them are distinct and individual, and thus may be brought directly.

**D.   Sherman Act**

95. Hartleib re-alleges and incorporates herein by reference each of the foregoing paragraphs and further alleges as follows:

96. Plaintiff Hartleib is a person injured by the anti-competitive activities of Defendants within the meaning of 15 U.S.C. §§ 1 and 2.

97. Defendants are persons within the meaning of 15 U.S.C. §§ 1 and 2 who conspired in restraint of trade and commerce among the several States and to monopolize same.

98. For purposes of 15 U.S.C. §§ 1 and 2, the conspiracy monopolizing and in restraint of trade and commerce among the several States consists of the agreement between the parties and unknown co-conspirators to: 1) prevent interoperable radio sets from entering the market as alleged above and thus maintain artificially high subscriber fees; and 2) merge Defendant Corporations Sirius and XM thus combining their licenses as alleged above to create a complete monopoly over the SDARS system.

99. The conspiracy was entered into on or before February 17, 2007, at which point Sirius and XM announced the merger agreement.  The conspiracy is believed to have been entered into on or about 2001.  By 2006, Interoperable Technologies, LLC had developed an interoperable radio receiver and had announced timeline to bring it to the market.  The radio receiver was never brought to the market as a result of the conspiracy.  Because subscribers could only switch between services at a relatively high expense Defendants were able to charge higher rates than would be possible in a competitive market.  The conspiracy also made possible the merger of Sirius and XM.  The conspiracy to merge and prevent the interoperable radios from entering the market was executed by the Defendants, who took substantial steps in furtherance of the conspiracy by announcing the merger agreement, entering into the Merger Agreement on February 19, 2007, merging XM and Sirius, and by refusing to market the interoperable radios whilst giving the illusion of an intent and ability to do so.

100. All of the above alleged acts of the Defendants were taken with the specific intent of restraining trade and commerce amongst the several States, and monopolizing trade and commerce amongst the several States.  Trade and commerce amongst the several States have been, or will be effected since: the radios used to receive Sirius and XM service are shipped between the several States to wherever such radios are purchased by consumers; payments by subscribers for Sirius and XM's services are mailed between the several States from whichever state the consumer resides in to the state that such mail is processed,

1  payments deposited and records kept; and Sirius and XM transmit
2  their satellite radio signals throughout the several states.
3  Such interstate trade and commerce will and has actually been
4  restrained in that consumers cannot obtain both Sirius and XM's
5  service in the same radio, are only able to do so with two radios
6  (if possible) and at great expense, and have been charged rates
7  higher than would have been possible in a competitive market.
8  Further, in their attempt to stifle competition, Sirius has been
9  deprived of an opportunity to increase its market share to
10 potential subscribers who would subscribe to the combined content
11 of Sirius and XM, but not the individual service of either one.
12 As a result, Sirius lost market share to competitive products
13 such as those offered through the internet and cellular devices.
14      101.  Sirius and XM together account for 100% of the market
15 for satellite Radio.  The merger placed in the control of a
16 single entity 100% of the market for satellite radio.
17 Accordingly, there is more than a dangerous probability that the
18 alleged actions will result in a monopoly: there is a dangerous
19 certainty that the alleged actions will result in a monopoly.
20      102.  The part of the conspiracy to prevent interoperable
21 radios from entering the market is in restraint of trade and
22 commerce because without an interoperable radio, a consumer needs
23 two separate radios to listen to the signals from Sirius and XM.
24 Obtaining two separate radios is cost prohibitive, and in the
25 case of auto installation, impractical as most vehicles are not
26 designed to accommodate two separate radios.  Further pursuant to
27 the March 24, 2008 findings of the DOJ, "past competition has
28 resulted in XM and Sirius entering long-term, sole-source

1  contracts that provide incentives to all of the major auto
2  manufacturers to install their radios in new vehicles." The end
3  result is that the consumer is stuck with whatever radio system
4  the automotive manufacturer has installed, and only has the
5  option of forsaking the existing service for the other, and that
6  at considerable expense.  This problem is exemplified in the
7  automotive context, but extends to other contexts as well:
8  competition is stifled because a consumer has no real ability to
9  choose between the service of XM or Sirius.  Accordingly, there
10  is an artificial lack of competition between Sirius and XM that
11  restrains trade and commerce amongst the several States.

12      103. The part of the conspiracy to prevent interoperable
13  radios from entering the market is also in restraint of trade and
14  commerce because it has prevented Sirius from expanding its
15  market share to individuals who would subscribe to combined
16  Sirius/XM service, but not the service of either alone.  The end
17  result here is that Sirius has lost market share to competitors
18  offering similar services via the internet and cellular devices.
19  Accordingly, there is an artificial lack of competition between
20  Sirius and XM that restrains trade and commerce amongst the
21  several States.

22      104. The entity resulting from the merger of Sirius and XM
23  has a complete and total monopoly on the satellite radio
24  industry, which is transmitted and heard throughout the several
25  States.  Accordingly, the conspiracy is illegal *per se* as it
26  gives the entity resulting from the merger absolute and
27  unfettered power to inflict the kind of public injury which the
28  Sherman Act condemns.

105. The aforementioned conspiracy is also illegal *per quod* for the following reasons: 1) the market is so concentrated that there are only two firms that are supposed to be competing with each other – Sirius and XM; 2) the two, and only, competitors in the market conspired to and did merge; 3) the merger not only has potential to lessen competition, it will, upon logical extension of the DOJ statement announcing its authorization of the merger, maintain a status quo of no competition; 4) the conspirators are engaging in anticompetitive activity by withholding interoperable radio receivers from the market; and 5) as a result of the conspiracy and anticompetitive practices, competition between brands has been stifled and will be completely eliminated.

106. Additional wrongdoers that may be part of the conspiracy include those employees, officers and agents of the Defendants and other entities or co-conspirators that participated with the other conspirators in the acts complained of in this complaint.

107. As a direct result of Defendants' refusal to deploy interoperable radios and completion of the merger, Sirius has suffered approximately $2.48 billion in damage as described above.

**E.   Demand Futility**

108. Hartleib re-alleges and incorporates herein by reference each of the foregoing paragraphs and further alleges as follows:

109. Hartleib brings this action derivatively in the right and for the benefit of Sirius to redress injuries suffered, and to be suffered by Sirius as a direct result of the acts alleged

1  in this complaint.  Sirius is named as a nominal defendant solely

2  in a derivative capacity.  This is not a collusive action to

3  confer jurisdiction on this Court that it would not otherwise

4  have.

5     110. Hartleib will adequately and fairly represent the

6  interests of Sirius.

7     111. Hartleib is and was an owner of the stock of Sirius

8  during times relevant o the wrongful conduct alleged here, and

9  remains a shareholder of Sirius.

10    112. After the merger, shares of Sirius became shares of

11  Sirius XM Radio, Inc ("Sirius XM").  The current board of Sirius

12  XM consists of the following twelve individuals: Joan Amble,

13  Defendant Leon Black, Defendant Lawrence Gilberti, Eddy

14  Hartenstein, Defendant James Holden, Chester Huber, Defendant Mel

15  Karmazin, John Mendel, Defendant James Moone, Defendant Gary

16  Parsons, Defendant Jack Shaw, and Jeffrey Zients.  Plaintiff did

17  not make a demand on the present Board to institute this action

18  because such a demand would be futile, wasteful and usless for

19  the following reasons:

20    113. Hartleib made repeated requests via telephone and in

21  writing for a meeting with Patrick Donnelly, the General Counsel

22  of Sirius, and a Manager of Interoperable Technologies, to

23  discuss Interoperable Technologies statements cited above.

24    114. Hartleib received both verbal and written confirmation

25  from Sirius' Senior Vice President of Investor Relations, Mr.

26  Paul Blaylock, that the requested meeting would be scheduled.

27    115. When Hartleib asked Mr. Blaylock to explain

28  Interoperable Technologies' posting, Mr. Blaylock referred

1  Plaintiff to Sirius' General Counsel, Mr. Patrick Donnelly,
2  repeatedly promising he would facilitate the requested meeting.

3    116. In one instance, Mr. Blaylock e-mailed confirmation of
4  his promise to schedule the meeting.

5    117. Hartleib received Mr. Blaylock's e-mail over eleven
6  months ago.

7    118. Hartleib twice personally visited Sirius offices in New
8  York attempting to meet with Mr. Donnelly.

9    119. Hartleib's attempts failed.

10    120. No meeting was ever scheduled.

11    121. Hartleib also repeatedly sought to obtain and
12  disseminate information and require Sirius to provide information
13  to its shareholders prior to any shareholder vote to approve the
14  merger between Sirius and XM.

15    122. Hartleib also made multiple unsuccessful attempts to
16  determine the number of shares that participated in the November
17  13, 2007 vote approving the merger between Sirius and XM.

18    123. Plaintiff contacted MacKenzie Partners, Inc.
19  ("MacKenzie") believing it to be responsible for tabulating the
20  Sirius' shareholders votes.

21    124. Hartleib was referred to a MacKenzie executive by the
22  name of Dan Sullivan.

23    125. Mr. Sullivan advised Hartleib he was unable to provide
24  the number of shares voted.

25    126. Mr. Sullivan further advised Hartleib he would have to
26  contact executives of Sirius and would get back to Hartleib.

27    127. Not having been contacted by Mr. Sullivan after two
28  days, Plaintiff again contacted Mr. Sullivan.

128. Mr. Sullivan this time advised Hartleib that Patrick Donnelly, General Counsel for Sirius instructed him not to provide the information.

129. Hartleib immediately tried to contact Mr. Donnelley.

130. Hartleib made repeated efforts to contact Mr. Donnelly.

131. Mr. Donnelly never returned any of Hartleib's numerous phone calls.

132. Hartleib then learned that MacKenzie was not the tabulator of the Sirius shareholders vote, that it was the Bank of New York, Sirius' Transfer Agent.

133. However, on November 11, 2007, the Sunday prior to the scheduled shareholder vote on Tuesday, November 13, 2007, Hartleib and several other Sirius shareholders known to Hartleib received calls at their homes from MacKenzie soliciting their votes in favor of the merger.

134. Hartleib received two such calls on Sunday November 11, 2007.

135. Hartleib informed the caller for MacKenzie that he would not be able to cast his votes as Sirius in his opinion had willfully failed to provide its shareholders with adequate information necessary to make a fully informed vote.

136. Hartleib made the statement to the MacKenzie caller, "Boy you're calling me at home when I own my shares in a brokerage account. You must be having difficulty obtaining the necessary votes."

137. The MacKenzie caller stated in response, "Oh yes, when you have nearly 1 million shareholders and they are predominantly all small individuals, it is a very daunting task. That's why we

are contacting shareholders like yourself that have a more

substantial position because we would have to contact many people

to total the number of shares that you own."

138. Hartleib then contacted several executives at the Bank of New York.

139. To a person, each one denied that the Bank was the tabulator of the Sirius shareholder vote on the merger with XM.

140. On December 7, 2007, Hartleib drafted a letter to Sirius' General Counsel, Patrick Donnelly and Sirius' Board of Directors.

141. The letter was sent via UPS next day air.

142. The letter was a formal request for the total number of shares voted on November 13, 2007 on Sirius' merger with XM and the overall percentage of all Sirius shareholders the vote represented.

143. Hartleib also formally requested a re-count and certification of the shareholder vote by a nonbiased independent third party.

144. Hartleib requested he be advised of the process required to accomplish this.

145. Hartleib also contacted MacKenzie and made the same request about process.

146. MacKenzie's Dan Sullivan told Hartleib that he could not provide this information pursuant to Mr. Donnelly's instructions, at which time Mr. Sullivan once again referred Hartleib back to Mr. Donnelly.

147. MacKenzie's Mr. Sullivan also informed Hartleib that the Bank of New York, as Sirius' Transfer Agent, was responsible

1   for the tabulation of the shareholder vote.

2       148. On or about May 8, 2007 Hartleib wrote to Defendant Mel
3   Karmazin asking him to take legal action for what Hartleib
4   believed was manipulation of Sirius' share price.  Hartleib
5   received no response.

6       149. As a result of their access to and review of the
7   internal corporate documents; conversations and/or connections
8   with corporate officers, employees, and other directors; and
9   attendance at management and Board meetings, each of the Board
10  members knew the adverse non-public information regarding the
11  Racketeering Enterprise and breaches of fiduciary duty alleged
12  above.

13      150. Defendant Mel Karmazin as CEO of Sirius XM, is an
14  inside director of Sirius XM and his principal professional
15  occupation is employment with Sirius XM.  Accordingly, he has and
16  continues to receive substantial monetary compensation and other
17  benefits.  Accordingly Defendant Mel Karmazin is legally
18  incapable of disinterestedly and independently considering a
19  demand to commence and vigorously prosecute this action.

20      151. Defendant Gary Parsons is the Chairman of the Board.
21  From May 1997 to August 2008, Mr. Parsons served as Chairman of
22  the Board of Director of XM Satellite Radio Inc. and previously
23  served as its Chief Executive Officer.  Accordingly, he is
24  believed to be an inside director of Sirius XM and his principal
25  professional occupation is employment with Sirius XM.
26  Accordingly, he has and continues to receive substantial monetary
27  compensation and other benefits, including a severance package
28  worth $9 million.  Accordingly Defendant Gary Parsons is legally

1  incapable of disinterestedly and independently considering a
2  demand to commence and vigorously prosecute this action.

3      152. The board is entrenched and the Board members have
4  multiple conflicts of interest and entangling business
5  relationships that preclude them from being disinterested and
6  vigorously prosecuting the wrongdoing alleged in this complaint.
7  Leon Black, Lawrence Gilberti, James Holden, Mel Karmazin, James
8  Moone, Gary Parsons, and Jack Shaw are defendants in this action
9  and thus have a conflict of interest in considering a demand to
10 commence and vigorously prosecute this action.   The following
11 Boad members were *each* directors of XM during an overlapping time
12 frame which coincides with the wrongful acts alleged in the
13 complaint, and may be as-of-yet undiscovered co-defendants: Joan
14 Amble (director of XM from 2006 to 2008), Eddy Hartenstein
15 (director of XM from may 2005 to August 2008), Chester Huber
16 (director of XM from may 2002 to August 2008), John Mendel
17 (director of XM from may 2005 to August 2008), and Jeffrey Zients
18 (director of XM from may 2006 to August 2008).   Therefore, these
19 directors too have a conflict of interest in considering a demand
20 to commence and vigorously prosecute this action.   Further, as
21 shown in Exhibit B, it appears that all of the current directors
22 own an interest in Sirius, with the possible exception of John
23 Mendel.

24     153. The following Board members are members of the Audit
25 Committee: Joan Amble (Chair of Audit Committee); Eddy
26 Hartenstein (member of Audit Committee); James Holden (member of
27 Audit Committee); James Moone (member of Audit Committee).   The
28 Audit Committee is responsible for reviewing the adequacy of

internal financial controls.  Each of these Board members took a position adverse to that of Sirius during the merger and during the preceding years during which the Racketeering Enterprise was undertaken.  Accordingly, these directors have a conflict of interest in considering a demand to commence and vigorously prosecute this action.

154. Each of the Board members and Defendants knew or directly benefitted from the wrongdoing alleged in this complaint: the Defendants and Board members participated in efforts to conceal or disguise these wrongs from Sirius' stockholders or recklessly or negligently disregarded the wrongs alleged in this complaint and are, therefore, not disinterested parties.

155. In order to bring this suit, most, and perhaps all, of the Board members would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thus excusing demand.

156. The acts alleged in this complaint constitute violations of the fiduciary duties owed by the Sirius' officers and directors, and these acts are incapable of ratification.

157. Each of the Board members authorized or permitted the false statements disseminated directly to the public or made directly to securities analysts and that were made available and distributed to shareholders, authorized or permitted the issuance of various of the false and misleading statements, and are principal beneficiaries of the wrongdoing alleged here, and thus could not fairly and fully prosecute such as suit even if such suit was instituted by them.

158. The current Board has failed and refused to seek to recover for the shareholders of Sirius for any of the wrongdoing alleged by Hartleib even though the Board members know of the claims and causes of action raised in this complaint.

159. Plaintiff has not made any demand on shareholders of Sirius to institute this action because a demand would be futile and useless because: 1) Sirius has in excess of 1.45 billion shares outstanding and thousands of shareholders; 2) making demand on such a number of shareholders would be impossible for Hartleib, who has no way of finding out names, addresses, or phone numbers of shareholders; and 3) making such a demand would be prohibitively expensive, assuming all shareholders could be individually identified.

<div align="center">

**COUNT ONE**

**(Violations of 18 U S C § 1962 (c))**

</div>

160. Plaintiff repeats and realleges each of the allegations set forth preceding as if set forth here in full.

161. 18 U S C § 1962 (c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity…

162. The purpose of this provision is to prevent the infiltration of legitimate business, e.g., the provision of communications services and even the practice of law, by organized criminals.

163. Pursuant to 18 U.S.C. § 1964, any person or corporation injured in its *business* or property by reason of a violation of 18 U.S.C. § 1962 may recover threefold the actual damages, plus the costs of the suit, including reasonable attorneys fees.

164. From 2002 to the present and continuing onward, the Defendants, together with unknown co-conspirators, unlawfully willfully and knowingly conducted and participated, directly and indirectly, in the conduct of the affairs of Sirius, XM and Interoperable Technologies as an enterprise that was engaged in and conducted activities which affected interstate and foreign commerce, through a pattern of racketeering activity, consisting of the acts of racketeering described in the paragraphs below, in violation of Title 18, United States Code, Section 1962(c).

165. As detailed below, the Defendants together with unknown co-conspirators committed numerous acts of mail fraud (18 U.S.C. § 1341), and wire fraud (18 U.S.C. § 1343).

166. Having committed numerous acts of mail fraud and wire fraud, the Enterprise committed racketeering activities as defined by 18 U.S.C. § 1961(1).

167. The Defendants' acts of mail fraud and wire fraud are racketeering activities and constitute predicate acts as defined under RICO.

168. Defendants and abetted by others, agreed to and did conduct Sirius and XM in furtherance of:

        (a) a scheme to render ineffective the FCC prohibition on combining their licenses satellite radio frequency spectrum by proposing, negotiating and entering into a plan of merger of the two satellite radio licensees;

(b) a scheme to render ineffective the FCC's interoperability mandate by executing agreements to develop interoperable satellite radio receivers and to cease exclusive contracts with OEM automakers without any intent of developing such receivers or ending such exclusivity contracts;

(c) a scheme to render ineffective the FCC's enforcement of the interoperability mandate (i) by providing misleading and inaccurate information about the potential commercial viability of marketing interoperable receivers, (ii) by failing to provide any factual basis for the assertions that interoperable receivers could not be commercially marketed, (iii) by developing and producing interoperable receivers in quantity while claiming only a few prototype receivers had been produced, (iv) by withdrawing, erasing and removing documents and web postings that contradicted the assertions that interoperable receivers could not be commercially marketed, (v) by lobbying FCC decision makers and using political influence to block the enforcement of the FCC interoperability mandate;

(d) a scheme to use the schemes identified in (a)-(c) preceding to gain a monopoly in satellite radio and in the vertical market for radio receivers;

(e) a scheme to benefit the officers and directors of Sirius by eliminating the competition of XM;

(f) a scheme to benefit the officers and directors of Sirius at the expense of Sirius and XM shareholders;

(g) a scheme to promote the merger as having consumer benefits based on selected advantages that lacked substance, but which were believed to have positive influence on the FCC Chairman, such as ala carte pricing;

(h) a scheme to support the benefits of the merger by obtaining endorsements of individuals and organizations without disclosing the facts about the merger, its likely consequences and the true intent behind it;

(i) a scheme to cover up the fact that a majority of shareholders did not vote to approve the merger;

(j) a scheme to render ineffective the DOJ prohibitions against monopolies and to merge Sirius and XM;

(k) a scheme to eliminate competition so that artificially high subscription prices could be charged to Sirius and XM subscribers;

(l) a scheme to prevent Sirius shareholders from selling their stock to avoid the losses that were incurred as a result of the acts alleged in this complaint;

169. The mail fraud and wire fraud and the related conspiracies committed by the Defendants, aided and abetted by unknown co-conspirators, form a pattern of racketeering activity through a criminal enterprise under 18 U.S.C. § 1961(5).

170. All racketeering activity described above is directly related to the racketeering Enterprise as defined herein.

171. All racketeering activity described above is part of the nexus of the affairs and functions of the racketeering Enterprise

1   as defined herein.

2   172. The Defendants were able to commit the racketeering

3   activities by virtue of their position in, association with, or

4   their involvement in or control over, the affairs of Sirius, XM

5   and Interoperable Technologies.

6   173. The racketeering activities began in or about 2001 and

7   the pattern of racketeering activity is open-ended and continues

8   at present and will continue into the future.

9   174. The racketeering activities have the same or similar

10   purposes, results, participants, victims, and methods of

11   commission.

12   175. The Defendants' racketeering activities in regard to

13   satellite radio constitute their regular way of doing satellite

14   radio business.

15   176. As a direct and proximate result of the Defendants'

16   actions alleged above, Sirius has been damaged in the amount of

17   to be determined at trial.

18                              **COUNT TWO**

19                   **(Violations of 18 U.S.C. 5 1962(a))**

20   177. Plaintiff repeats and re-alleges each of the

21   allegations set forth above as if set forth herein.

22   178. 18 U.S.C. § 1962(a) proscribes the following conduct:

23           It shall be unlawful for any person who has

24           received any income derived, directly or

25           indirectly, from a pattern of racketeering

26           activity. . to use or invest, directly or

27           indirectly, any part of such income, or the

28           proceeds of such income, in acquisition of any

1          interest in, or the establishment or operation

2          of, any enterprise which is engaged in, or the

3          activities of which affect, interstate or

4          foreign commerce.

5     179. Pursuant to 18 U.S.C. § 1964, any person or corporation

6 injured in its business or property by reason of a violation of 18

7 U.S.C. § 1962 may recover threefold the actual damages, plus the

8 costs of the suit, including reasonable attorneys fees.

9     180. From at least 2002, the Defendants together with

10 unknown co-conspirators received income derived, directly or

11 indirectly, from a pattern of racketeering activity, consisting

12 of the acts of racketeering described in paragraphs (a) through

13 (l) above, and unlawfully, willfully and knowingly used or

14 invested, directly or indirectly, part of such income, or the

15 proceeds of such income, in the acquisition of an interest in

16 and/or the establishment or operation of Sirius, XM and

17 Interoperable Technologies, which enterprise engaged in and the

18 activities of which affected interstate and foreign commerce, in

19 violation of Title 18, United States Code, Section 1962(a)

20     181. As a direct and proximate result of the Defendants'

21 actions alleged above, Sirius has been damaged in an amount to be

22 determined at trial.

23                          **COUNT THREE**

24               **(Violations of 18 U.S.C. 5 1962(b))**

25     182. Plaintiff repeats and re-alleges each of the

26 allegations set forth above as if set forth herein.

27     183. 18 U.S.C. 1962(b) prescribes the following conduct:

28          It shall be unlawful for any person through a

1                    pattern of racketeering activity . . . to

2                    acquire or maintain, directly or indirectly,

3                    any interest in or control of any enterprise

4                    which is engaged in, or the activities of

5                    which affect, interstate or foreign commerce.

6     184. Pursuant to 18 U.S.C. § 1964, any person or corporation

7 injured in its business or property by reason of a violation of

8 18 U.S.C. § 1962 may recover threefold the actual damages, plus

9 the costs of the suit, including reasonable attorneys fees.

10    185. From least 2002, Defendants, together with unknown co-

11 conspirators unlawfully, willfully and knowingly acquired and

12 maintained, directly and indirectly, an interest in and control of

13 Sirius, XM and Interoperable Technologies which enterprise engaged

14 in and the activities of which affected interstate and foreign

15 commerce, through a pattern of racketeering activity, consisting

16 of the acts of racketeering described in paragraphs (a) through

17 (1) above, in violation of Title 18, United States Code, Section

18 1962(b).

19    186. As a direct and proximate result of the Defendants'

20 actions alleged above, Sirius has been damaged in an amount to be

21 determined at trial.

22                        **COUNT FOUR**

23              **(Violations of 18 U.S.C. 5 1962(c))**

24    187. Plaintiff repeats and re-alleges each of the

25 allegations set forth above as if set forth herein.

26    188. 18 U.S.C. 1962(c) prescribes the following conduct:

27                    It shall be unlawful for any person employed

28                    by or associated with any enterprise engaged

1          in…interstate or foreign commerce, to conduct

2          or participate, directly or indirectly, in the

3          conduct of such enterprise's affairs through a

4          pattern of racketeering activity.

5     189. Pursuant to 18 U.S.C. § 1964, any person or corporation

6  injured in its business or property by reason of a violation of

7  18 U.S.C. § 1962 may recover threefold the actual damages, plus

8  the costs of the suit, including reasonable attorneys fees.

9     190. From least 2002, Defendants, together with unknown co-

10 conspirators were associated and/or employed by the Enterprise

11 (which was engaged in and effected interstate and foreign

12 commerce) and unlawfully, willfully and knowingly conducted and

13 participated in, Sirius, XM and Interoperable Technologies'

14 enterprise ant its affairs through a pattern of racketeering

15 activity, consisting of the acts of racketeering described in

16 paragraphs (a) through (l) above, in violation of Title 18, United

17 States Code, Section 1962(c).

18    191. As a direct and proximate result of the Defendants'

19 actions alleged above, Sirius has been damaged in an amount to be

20 determined at trial.

21                         **COUNT FIVE**

22               **(Violations of 18 U.S.C. 5 1962(d))**

23    192. Plaintiff repeats and re-alleges each of the

24 allegations set forth above as if set forth herein.

25    193. 18 U.S.C. 1962(d) prescribes the following conduct:

26          It shall be unlawful for any person to

27          conspire to violate any of the provisions of

28          subsection (a), (b), or (c) of this section.

1    194. Pursuant to 18 U.S.C. § 1964, any person or corporation
2    injured in its business or property by reason of a violation of
3    18 U.S.C. § 1962 may recover threefold the actual damages, plus
4    the costs of the suit, including reasonable attorneys fees.

5    195. From least 2002, Defendants, together with unknown co-
6    conspirators were associated conspired to commit the acts of
7    racketeering described in paragraphs (a) through (l) above, in
8    violation of Title 18, United States Code, Section 1962(d).

9    196. As a direct and proximate result of the Defendants'
10   actions alleged above, Sirius has been damaged in an amount to be
11   determined at trial.

12
13

14                        **COUNT SIX**

15                **(Breach of Fiduciary Duties)**

16   197. Plaintiff repeats and re-alleges each of the
17   allegations set forth above as if set forth herein.

18   198. The officers and directors of Sirius and XM owed their
19   shareholders fiduciary duties.

20   199. The Individual Sirius Defenants breached those duties
21   by:

22            (a)   Making false, misleading and deceptive statements
23                  to authorities, their shareholders, the media and
24                  the public;

25            (b)   Using the United States mail and wire
26                  communications networks to conduct their unlawful
27                  and fraudulent enterprise;

28            (c)   Manipulating and compromising the FCC in regard to

the interoperability mandate;

(d)   Manipulating and compromising their shareholders by self-dealing and by concealing material facts, intents and motivations;

(e)   Merging Sirius with XM;

(f)   By wasting a corporate opportunity to expand Sirius' market share;

(g)   By causing Sirius to loose market share;

(h)   By failing to maintain oversight of the officers and operations of Sirius;

(i)   By using their positions to their own advantage and to the detriment of Sirius;

(j)   By using secret information to their advantage and to the detriment of Sirius.

200. As a direct and proximate result of the Individual Sirius Defendants breaches of fiduciary duty, Sirius has been damaged in an amount to be determined at trial.

201. Plaintiff on behalf of Sirius has no adequate remedy at law for the breaches of fiduciary duty alleged above.

**COUNT SEVEN**

**(Breach of Fiduciary Duties)**

202. Plaintiff repeats and re-alleges each of the allegations set forth above as if set forth herein.

203. The controlling shareholders of Sirius and XM owed the other shareholders fiduciary duties.

204. The Individual Sirius Defenants breached those duties by:

(a)   Making false, misleading and deceptive statements

50

to authorities, their shareholders, the media and
the public;

(b)   Using the United States mail and wire
communications networks to conduct their unlawful
and fraudulent enterprise;

(c)   Manipulating and compromising the FCC in regard to
the interoperability mandate;

(d)   Manipulating and compromising their shareholders
by self-dealing and by concealing material facts,
intents and motivations;

(e)   Merging Sirius with XM;

(f)   By wasting a corporate opportunity to expand
Sirius' market share;

(g)   By causing Sirius to loose market share;

(h)   By failing to maintain oversight of the officers
and operations of Sirius;

(i)   By using their positions to their own advantage
and to the detriment of Hartleib;

(j)   By using secret information to their advantage and
to the detriment of Hartleib.

205. As a direct and proximate result of the Individual
Sirius Defendants breaches of fiduciary duty, Hartleib has been
damaged in an amount to be determined at trial.

206. Hartleib has no adequate remedy at law for the
violations of fiduciary duty alleged above.

**COUNT EIGHT**

**(Violations of 15 U.S.C. §§ 1 and 2)**

207. Plaintiff repeats and re-alleges each of the

allegations set forth above as if set forth herein.

208. 15 U.S.C. § 1 provides that:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal….

209. 15 U.S.C. § 2 provides that:

Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony….

210. Pursuant to 15 U.S.C. §§ 1 and 2, any person or corporation injured in its business or property by reason of a violation of 15 U.S.C. §§ 1 or 2 may recover threefold the actual damages, plus the costs of the suit, including reasonable attorneys fees.

211. From at least 2002, Defendants, together with unknown co-conspirators unlawfully, willfully and knowingly entered into a conspiracy to and: 1) began the process of merging Sirius and XM; and 2) prohibited interoperable radios from entering the market.

212. Such actions were taken intentionally, knowingly and willingly.

213. Substantial further steps were taken in advance of the conspiracy when Individual Sirius Defendants and Individual XM Defendants caused Sirius and XM to enter into the merger agreement, and when Defendants prohibited interoperable radios from entering the market.

214. Pursuant to 15 U.S.C. § 15, any person injured his, her or its business or property by reason of a violation of 15 U.S.C. § 1 or 2 may recover threefold the actual damages, plus the costs of the suit, including reasonable attorneys fees and prejudgment interest.

215. As a result of the above actions, trade amongst the several states has been restrained in that competition between Sirius and XM service has been artificially constrained, in that consumers have no real ability to choose between XM and Sirius, in that consumers have been charged artificially high rates, and in that Sirius has lost market share.

216. Sirius and XM together account for 100% of the satellite radio market.  Their merger places the entire satellite radio market under the control of a single entity.  Accordingly, there is a monopoly.

217. Defendants have engaged in anticompetitive activities by preventing interoperable radios from entering the market.  This has virtually eliminated inter-brand competition, and has harmed Sirius.

218. All of these activities adversely impact interstate commerce and trade.

219. As a direct and proximate result of the Defendants' actions alleged above, Sirius has been damaged in an amount to be

determined at trial.

## CONCLUSION

220. The acts and omissions of the Defendants together with unknown co-conspirators constitute an enterprise for racketeering and corrupt practices that exists today and is on-going for the purpose of influencing federal authority, i.e., the Federal Communications Commission and Department of Justice, to rescind restrictions against combining the satellite radio spectrum of the only two licensees of that spectrum so that Sirius and XM can merge rather than compete by making available interoperable satellite radios receivers.

221. The acts and omissions of the Defendants together with the acts and omissions of unknown co-conspirators, constitute an enterprise for racketeering and corrupt practices that willfully and wrongfully was intended to mislead and misrepresent the true purpose of the merger and the true timeline for deploying interoperable radios.

222. As a result of the enterprise and to further the enterprise, Defendants, together with unknown co-conspirators, engaged in conduct that breached their fiduciary duties to Sirius and to Hartleib.

223. As a result of the conspiracy to contract, combine and conspire in restraint of trade, and the monopolization, combination to monopolize and conspiracy to monopolize the satellite radio industry which constitutes trade and commerce among the states, Defendants have violated 15 U.S.C. §§ 1 and 2.

WHEREFORE, Plaintiff demands judgment against all Defendants as follows:

A.   rescission of the merger;

B.   awarding Sirius treble damages as a result of Defendants' violations of the Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. 1961 et seq.;

C.   awarding Sirius damages as a result of Defendants' breach of fiduciary duties;

D.   awarding Plaintiff damages as a result of Defendants' breach of fiduciary duties;

E.   awarding Sirius treble damages as a result of Defendants' violations of 15 U.S.C. §§ 1 and 2.;

F.   awarding to the Plaintiff prejudgment and post-judgment interest at the lawful rate;

G.   awarding to Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees, and

H.   for any other and further relief this Court deems just and proper under the circumstances.

DATED: 10/27/08

Respectfully submitted,
HORWITZ, CRON & JASPER

THOMAS D. GEORGIANNA
Attorney for Plaintiff
MICHAEL HARTLEIB

VERIFICATION

I, MICHAEL HARTLEIB, am the Plaintiff in this action. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and as to those matters, I believe them to be true.

1    I declare under penalty of perjury under the laws of the

2    State of California that the foregoing is true and correct.

3    Date: 10-27-, 2008

4                              MICHAEL HARTLEIB

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5-6

**EXHIBIT "A"**

March 14, 2005

RECEIVED

MAR 1 4 2005

Federal Communications Commission
Office of Secretary

Mr. Thomas S. Tycz
Chief, Satellite Division
International Bureau
Federal Communications Commission
445 Twelfth Street, S.W.
Washington, DC 20554

Re:     IB Docket No. 95-91; SAT-MOD 20040212-00017; SAT-RPL-20040212-
        00018; SAT-RPL-20040212-00019; SAT-AMEND-97;
        10/11-DSS-P-9312/15/92; 26/27-DSS-LA-931/15/93;
        83/83-SAT-AMEND-953/10/95

Dear Mr. Tycz:

        On January 28, 2005, you asked XM Radio Inc. ("XM") and Sirius Satellite Radio
Inc. ("Sirius") to update you on their activities related to receiver design.[1]  XM and Sirius
jointly submit this letter in response to your request, and reconfirm their compliance with
Section 25.144(a)(3)(ii) of the Commission's rules by including interoperable radios in
their respective system designs.

        XM and Sirius have designed and licensed receiver systems that share a common
head unit, antenna, and wiring harness, while other entities continue to be responsible for
the manufacture and distribution of satellite radios.  Several aftermarket and OEM radio
manufacturers now produce head units that operate with the receiver boxes of either
service provider.  Some head units are also branded and marketed as "SAT Ready" to
denote their ability to work with both systems.  At least one automaker factory installs
head units and antennas that are compatible with both XM and Sirius' systems.  This
configuration allows the customer to purchase a trunk-mounted box for either satellite
radio provider without disturbing the rest of the components.  This unit can be swapped at
any time for a trunk-mounted box from the other satellite radio provider.

        In February 2000, XM and Sirius signed a joint development agreement to
develop interoperable technologies, and cross-licensed to each other their respective
intellectual property and technology to advance the joint venture.  This joint venture has
been tasked with combining XM's and Sirius' proprietary chipsets into a compact and
efficient device capable of receiving both services.  The joint venture has been staffed
with engineering personnel that are independent of XM and Sirius.  To date, the

---

[1] See Letter from Thomas S. Tycz to Lon C. Levin, XM Radio Inc. (January 28, 2005); Letter from Thomas
S. Tycz to Patrick L. Donnelly, Sirius Satellite Radio Inc. (January 28, 2005).

No. of Copies rec'd   0
List ABCDE

Mr. Thomas S. Tycz
March 14, 2005
Page 3

interoperable radios, however, will depend in large part on factors outside of the control of either XM or Sirius, including consumer demand for interoperability and the willingness of manufacturers to manufacture, distribute, market and sell interoperable radios after carefully weighing the integration, qualification, costs and efficiency considerations.

Please contact the undersigned if you have any further questions.

Very truly yours,

William Bailey
Senior Vice President
Regulatory and Government Affairs
XM Radio Inc.
1500 Eckington Place, NE
Washington, DC 20002
202 380 4000

Patrick L. Donnelly
Executive Vice President and General Counsel
Sirius Satellite Radio Inc.
1221 Avenue of the Americas
New York, NY 10020
212 584 5100

cc:    Office of the Secretary
       JoAnn Lucanik
       Stephen Duall

**EXHIBIT "B"**



Home | Archives | Products | About | Contact | FAQ |    New User? Sign Up | Sign In

# Sec Form 4

| Form 4 Filings | Insider Buys | Significant Buys | Penny Stocks Insider Buying | Insider Sales |
| Insider Buy Sell Ratios | Stock Options | Insider Trading Top Lists | Insider Trading Graph View | Insider Watch |

## Sec Filings Insider Trading - Sirius Satellite Radio Inc (SIRI)

Select Time period: All Data [Go!]

Send this page to: Blog | Digg | Reddit | Facebook | Stumble | del.icio.us

Enter Stock Ticker Symbol or Cik: [        ] [Free Search!] [Cik Lookup...]

Search By Company or Insider Name: [        ] [Search!]

"Insiders might sell their shares for any number of reasons, but they buy them for only one: they think the price will rise"
- Peter Lynch ==>> What is insider trading>>

Email a friend >>...

SIRI Insider Trading - Sirius Satellite Radio Inc
(c) http://www.secform4.com/

Total buys: $21,494,250, total sales: $400,973,970, net total: $-379,479,720
(Vertical in logarithmic scale; Chart shown on reported date)

### Sirius Satellite Radio Inc: Insider Trading and Stock Options

Goto page 0, 1, 2, 3, Next

Common stock purchase or sale:

| Transaction & Date | Reported Date | Company | Symbol | Insider Relationship | Shares Traded | Average Price | Total Amount | Shares Ownership | Filing |
|---|---|---|---|---|---|---|---|---|---|
| 2008-08-04 Purchase | 2008-08-04 4:38 pm | SIRIUS SATELLITE RADIO INC | SIRI | KARMAZIN MEL (CEO (Director) | 2,000,000 | $1.373 | $2,746,400 | 8,500,000 (Direct) | View |
| 2008-05-16 Sale | 2008-05-19 3:30 pm | SIRIUS SATELLITE RADIO INC | SIRI | DONNELLY PATRICK L (EVP, General Counsel & Sec.) | 45,573 | $2.72 | $123,959 | 1,755,103 (Direct) | View |
| 2008-03-14 Sale | 2008-03-17 3:30 pm | SIRIUS SATELLITE RADIO INC | SIRI | FREAR DAVID J (EVP and CFO) | 110,351 | $2.73 | $301,258 | 830,790 (Direct) | View |
| 2008-02-19 Sale | 2008-02-21 4:10 pm | SIRIUS SATELLITE RADIO INC | SIRI | MEYER JAMES E (President, Sales & Operations) | 55,468 | $3.1 | $171,951 | 1,238,479 (Direct) | View |
| 2008-02-19 Sale | 2008-02-21 4:09 pm | SIRIUS SATELLITE RADIO INC | SIRI | Greenstein Scott Andrew (Pres., Entertainment & Sports) | 55,092 | $3.1 | $170,785 | 1,473,307 (Direct) | View |
| 2008-02-19 Sale | 2008-02-21 4:09 pm | SIRIUS SATELLITE RADIO INC | SIRI | Calderone Adrienne Elizabeth (SVP and Corporate Controller) | 3,190 | $3.1 | $9,889 | 24,358 (Direct) | View |
| 2008-02-19 Sale | 2008-02-21 4:09 pm | SIRIUS SATELLITE RADIO INC | SIRI | DONNELLY PATRICK L (EVP, General Counsel & Sec.) | 30,165 | $3.1 | $93,512 | 1,800,676 (Direct) | View |
| 2007-12-31 Sale | 2008-01-02 4:01 pm | SIRIUS SATELLITE RADIO INC | SIRI | MEYER JAMES E (President, Sales & Operations) | 33,334 | $3 | $100,002 | 1,115,375 (Direct) | View |
| 2007-08-07 Sale | 2007-08-09 4:06 pm | SIRIUS SATELLITE RADIO INC | SIRI | Greenstein Scott Andrew (Pres., Entertainment & Sports) | 144,848 | $3.01 | $435,992 | 1,375,088 (Direct) | View |
| 2007-04-13 Sale | 2007-04-17 5:01 pm | SIRIUS SATELLITE RADIO INC | SIRI | Greenstein Scott Andrew (Pres., Entertainment & Sports) | 153,023 | $3.08 | $471,311 | 1,519,936 (Direct) | View |
| 2007-04-13 Sale | 2007-04-17 5:01 pm | SIRIUS SATELLITE RADIO INC | SIRI | MEYER JAMES E (President, Sales & Operations) | 132,699 | $3.08 | $408,713 | 1,123,675 (Direct) | View |
| 2006-12-11 Sale | 2006-12-12 5:02 pm | SIRIUS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (Director Chairman of the Board) | 1,846,475 | $3.822 | $7,056,674 | 3,775,785 (Direct) | View |
| 2006-11-10 Sale | 2006-11-13 4:31 pm | SIRIUS SATELLITE RADIO INC | SIRI | Greenstein Scott Andrew (Pres., Entertainment & Sports) | 1,201,918 | $4.2 | $5,047,815 | 1,564,850 (Direct) | View |
| 2006-11-10 Sale | 2006-11-13 4:31 pm | SIRIUS SATELLITE RADIO INC | SIRI | MEYER JAMES E (President, Sales & Operations) | 1,300,000 | $4.2 | $5,459,740 | 1,131,374 (Direct) | View |

Other transactions:

| Transaction & Date | Reported Date | Company | Symbol | Insider Relationship | Shares Traded | Average Price | Total Amount | Shares Ownership | Filing |
|---|---|---|---|---|---|---|---|---|---|
| 2008-07-28 Option Award | 2008-07-30 5:39 pm | SIRIUS SATELLITE RADIO INC | SIRI | ZIENTS JEFFREY D (Director) | 1,242,000 | $0 | $0 | 1,242,000 (Indirect) | View |
| 2008-07-28 Option Award | 2008-07-30 5:38 pm | SIRIUS SATELLITE RADIO INC | SIRI | SHAW JACK A (Director) | 184,000 | $0 | $0 | 184,000 (Direct) | View |
| 2008-07-28 Option Award | 2008-07-30 5:38 pm | SIRIUS SATELLITE RADIO INC | SIRI | PARSONS GARY (Director) | 3,203,581 | $0 | $0 | 74,423 (Direct Indirect) | View |
| 2008-03-25 Gift | 2008-03-26 4:08 pm | SIRIUS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (Director Chairman of the Board) | 25,000 | $0 | $0 | 3,525,785 (Direct) | View |
| 2008-02-12 Option Award | 2008-02-13 4:06 pm | SIRIUS SATELLITE RADIO INC | SIRI | FREAR DAVID J (EVP and CFO) | 300,000 | $0 | $0 | 941,141 (Direct) | View |
| 2008-01-23 Option Award | 2008-01-25 4:04 pm | SIRIUS SATELLITE RADIO INC | SIRI | Calderone Adrienne Elizabeth (SVP and Corporate Controller) | 19,164 | $0 | $0 | 27,548 (Direct) | View |
| 2008-01-23 Option Award | 2008-01-25 4:04 pm | SIRIUS SATELLITE RADIO INC | SIRI | DONNELLY PATRICK L (EVP, General Counsel & Sec.) | 104,530 | $0 | $0 | 1,830,841 (Direct) | View |
| 2008-01-23 Option Award | 2008-01-25 4:04 pm | SIRIUS SATELLITE RADIO INC | SIRI | FREAR DAVID J (EVP and CFO) | 121,952 | $0 | $0 | 641,141 (Direct) | View |
| 2008-01-23 Option Award | 2008-01-25 4:04 pm | SIRIUS SATELLITE RADIO INC | SIRI | Greenstein Scott Andrew (Pres., Entertainment & Sports) | 153,311 | $0 | $0 | 1,528,399 (Direct) | View |
| 2008-01-23 | 2008-01-25 | | | MEYER JAMES E | | | | 1,293,947 | |

| Transaction & Date | Reported Date | Company | Symbol | Insider Relationship | Shares Traded | Conversion Price | Shares Ownership | Filing |
|---|---|---|---|---|---|---|---|---|
| Option Award | 4:04 pm | SIRIUS SATELLITE RADIO INC | SIRI | (President, Sales & Operations) | 178,572 | $0 | $0 | (Direct) | View |
| 2007-12-31 Exercise | 2008-01-02 4:01 pm | SIRIUS SATELLITE RADIO INC | SIRI | MEYER JAMES E (President, Sales & Operations) | 33,334 | $1.04 | $34,667 | 1,148,709 (Direct) | View |
| 2007-09-05 Gift | 2007-09-06 4:05 pm | SIRIUS SATELLITE RADIO INC | SIRI | MEYER JAMES E (President, Sales & Operations) | 8,300 | $0 | $0 | 1,115,375 (Direct) | View |
| 2007-05-17 Option Award | 2007-05-21 4:08 pm | SIRIUS SATELLITE RADIO INC | SIRI | DONNELLY PATRICK L (EVP, General Counsel & Sec.) | 275,000 | $0 | $0 | 1,726,311 (Direct) | View |
| 2007-04-09 Gift | 2007-04-11 4:12 pm | SIRIUS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (Director Chairman of the Board) | 225,000 | $0 | $0 | 3,550,785 (Direct) | View |
| 2007-02-01 Option Award | 2007-02-05 4:37 pm | SIRIUS SATELLITE RADIO INC | SIRI | Calderone Adrienne Elizabeth (SVP and Corporate Controller) | 8,109 | $0 | $0 | 8,109 (Direct) | View |
| 2007-02-01 Option Award | 2007-02-05 4:37 pm | SIRIUS SATELLITE RADIO INC | SIRI | DONNELLY PATRICK L (EVP, General Counsel & Sec.) | 60,811 | $0 | $0 | 1,451,311 (Direct) | View |
| 2007-02-01 Option Award | 2007-02-05 4:37 pm | SIRIUS SATELLITE RADIO INC | SIRI | FREAR DAVID J (EVP and CFO) | 70,946 | $0 | $0 | 519,189 (Direct) | View |
| 2007-02-01 Option Award | 2007-02-05 4:37 pm | SIRIUS SATELLITE RADIO INC | SIRI | Greenstein Scott Andrew (Pres., Entertainment & Sports) | 108,109 | $0 | $0 | 1,672,959 (Direct) | View |
| 2007-02-01 Option Award | 2007-02-05 4:37 pm | SIRIUS SATELLITE RADIO INC | SIRI | MEYER JAMES E (President, Sales & Operations) | 125,000 | $0 | $0 | 1,256,374 (Direct) | View |
| 2006-12-11 Exercise | 2006-12-12 5:02 pm | SIRIUS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (Director Chairman of the Board) | 3,100,000 | $1.04 | $3,224,000 | 5,622,260 (Direct) | View |
| 2006-11-10 Exercise | 2006-11-13 4:31 pm | SIRIUS SATELLITE RADIO INC | SIRI | Greenstein Scott Andrew (Pres., Entertainment & Sports) | 1,350,000 | $3.14 | $4,239,000 | 2,766,768 (Direct) | View |
| 2006-11-10 Exercise | 2006-11-13 4:31 pm | SIRIUS SATELLITE RADIO INC | SIRI | MEYER JAMES E (President, Sales & Operations) | 1,300,000 | $2.978 | $3,872,000 | 2,431,374 (Direct) | View |

## Stock options: Exercise, Award, Grant, Conversion

| Transaction & Date | Reported Date | Exercisable Expiration | Company | Symbol | Insider Relationship | Shares Traded | Conversion Price | Shares Ownership | Filing |
|---|---|---|---|---|---|---|---|---|---|
| 2008-07-28 Option Award | 2008-07-30 5:39 pm | N/A 2016-05-26 | SIRIUS SATELLITE RADIO INC | SIRI | ZIENTS JEFFREY D (Director) | 46,000 | $3.11 | 46,000 (Direct) | View |
| 2008-07-28 Option Award | 2008-07-30 5:39 pm | 2017-08-10 | SIRIUS SATELLITE RADIO INC | SIRI | ZIENTS JEFFREY D (Director) | 46,000 | $2.48 | 46,000 (Direct) | View |
| 2008-07-28 Option Award | 2008-07-30 5:38 pm | N/A 2015-05-26 | SIRIUS SATELLITE RADIO INC | SIRI | HARTENSTEIN EDDY W (Director) | 46,000 | $6.88 | 46,000 (Direct) | View |
| 2008-07-28 Option Award | 2008-07-30 5:38 pm | N/A 2016-04-20 | SIRIUS SATELLITE RADIO INC | SIRI | HARTENSTEIN EDDY W (Director) | 46,000 | $4.88 | 46,000 (Direct) | View |
| 2008-07-28 Option Award | 2008-07-30 5:38 pm | 2017-08-10 | SIRIUS SATELLITE RADIO INC | SIRI | HARTENSTEIN EDDY W (Director) | 46,000 | $2.48 | 46,000 (Direct) | View |
| 2008-07-28 Option Award | 2008-07-30 5:38 pm | N/A 2014-03-25 | SIRIUS SATELLITE RADIO INC | SIRI | SHAW JACK A (Director) | 46,000 | $5.9 | 46,000 (Direct) | View |
| 2008-07-28 Option Award | 2008-07-30 5:38 pm | N/A 2015-04-20 | SIRIUS SATELLITE RADIO INC | SIRI | SHAW JACK A (Director) | 46,000 | $5.84 | 46,000 (Direct) | View |
| 2008-07-28 Option Award | 2008-07-30 5:38 pm | N/A 2016-04-20 | SIRIUS SATELLITE RADIO INC | SIRI | SHAW JACK A (Director) | 46,000 | $4.89 | 46,000 (Direct) | View |
| 2008-07-28 Option Award | 2008-07-30 5:38 pm | 2017-08-10 | SIRIUS SATELLITE RADIO INC | SIRI | SHAW JACK A (Director) | 46,000 | $2.49 | 46,000 (Direct) | View |
| 2008-07-28 Option Award | 2008-07-30 5:38 pm | 2009-07-07 | SIRIUS SATELLITE RADIO INC | SIRI | SHAW JACK A (Director) | 123,082 | $2.07 | 123,082 (Direct) | View |
| 2008-07-28 Option Award | 2008-07-30 5:38 pm | N/A 2016-12-15 | SIRIUS SATELLITE RADIO INC | SIRI | AMBLE JOAN LORDI (Director) | 46,000 | $3.45 | 46,000 (Direct) | View |
| 2008-07-28 Option Award | 2008-07-30 5:38 pm | 2017-08-10 | SIRIUS SATELLITE RADIO INC | SIRI | AMBLE JOAN LORDI (Director) | 46,000 | $2.48 | 46,000 (Direct) | View |
| 2008-07-28 Option Award | 2008-07-30 5:38 pm | 2010-07-21 | SIRIUS SATELLITE RADIO INC | SIRI | PARSONS GARY (Director) | 460,000 | $8.1 | 460,000 (Direct) | View |
| 2008-07-28 Option Award | 2008-07-30 5:38 pm | 2014-08-06 | SIRIUS SATELLITE RADIO INC | SIRI | PARSONS GARY (Director) | 3,450,000 | $5.32 | 3,450,000 (Direct) | View |
| 2008-07-28 Option Award | 2008-07-30 5:38 pm | 2014-02-18 | SIRIUS SATELLITE RADIO INC | SIRI | PARSONS GARY (Director) | 1,150,000 | $4.79 | 1,150,000 (Direct) | View |
| 2008-07-28 Option Award | 2008-07-30 5:38 pm | 2012-01-16 | SIRIUS SATELLITE RADIO INC | SIRI | PARSONS GARY (Director) | 149,500 | $3.65 | 149,500 (Direct) | View |
| 2008-07-28 Option Award | 2008-07-30 5:38 pm | 2011-07-02 | SIRIUS SATELLITE RADIO INC | SIRI | PARSONS GARY (Director) | 1,230,500 | $3.65 | 1,230,500 (Direct) | View |
| 2008-07-28 Option Award | 2008-07-30 5:38 pm | 2009-07-16 | SIRIUS SATELLITE RADIO INC | SIRI | PARSONS GARY (Director) | 1,230,822 | $2.07 | 1,230,822 (Direct) | View |
| 2008-07-28 Option Award | 2008-07-30 5:38 pm | 2012-07-01 | SIRIUS SATELLITE RADIO INC | SIRI | PARSONS GARY (Director) | 690,000 | $1.46 | 690,000 (Direct) | View |
| 2008-07-28 Option Award | 2008-07-30 5:38 pm | 2013-03-20 | SIRIUS SATELLITE RADIO INC | SIRI | PARSONS GARY (Director) | 1,840,000 | $1.17 | 1,840,000 (Direct) | View |
| 2008-02-12 Option Award | 2008-02-13 4:06 pm | 2009-02-12 2018-02-12 | SIRIUS SATELLITE RADIO INC | SIRI | FREAR DAVID J (EVP and CFO) | 1,500,000 | $3.1 | 1,500,000 (Direct) | View |
| 2008-01-25 Option Award | 2008-01-25 4:04 pm | 2009-01-23 2018-01-23 | SIRIUS SATELLITE RADIO INC | SIRI | Calderone Adrienne Elizabeth (SVP and Corporate Controller) | 156,000 | $2.87 | 156,000 (Direct) | View |
| 2008-01-23 Option Award | 2008-01-25 4:04 pm | 2009-01-23 2018-01-23 | SIRIUS SATELLITE RADIO INC | SIRI | FREAR DAVID J (EVP and CFO) | 483,000 | $2.87 | 483,000 (Direct) | View |
| 2008-01-23 Option Award | 2008-01-25 4:04 pm | 2009-01-23 2018-01-23 | SIRIUS SATELLITE RADIO INC | SIRI | Greenstein Scott Andrew (Pres., Entertainment & Sports) | 607,000 | $2.87 | 607,000 (Direct) | View |
| 2008-01-23 Option Award | 2008-01-25 4:04 pm | 2009-01-23 2018-01-23 | SIRIUS SATELLITE RADIO INC | SIRI | MEYER JAMES E (President, Sales & Operations) | 707,000 | $2.87 | 707,000 (Direct) | View |
| 2007-12-31 Exercise | 2008-01-02 4:01 pm | 2004-07-01 2013-08-11 | SIRIUS SATELLITE RADIO INC | SIRI | MEYER JAMES E (President, Sales & Operations) | 33,334 | $1.04 | 66,666 (Direct) | View |
| 2007-08-15 Option Award | 2007-08-17 09:55 am | 2008-08-15 2017-08-15 | SIRIUS SATELLITE RADIO INC | SIRI | MCGUINESS MICHAEL (Director) | 45,962 | $2.9 | 45,962 (Direct) | View |
| 2007-08-15 Option Award | 2007-08-17 09:55 am | 2008-08-15 2017-08-15 | SIRIUS SATELLITE RADIO INC | SIRI | MOONEY JAMES (Director) | 45,962 | $2.9 | 45,962 (Direct) | View |
| 2007-08-15 Option Award | 2007-08-17 09:54 am | 2008-08-15 2017-08-15 | SIRIUS SATELLITE RADIO INC | SIRI | BLACK LEON D (Director) | 45,962 | $2.9 | 45,962 (Direct) | View |
| 2007-08-15 Option Award | 2007-08-17 09:54 am | 2008-08-15 2017-08-15 | SIRIUS SATELLITE RADIO INC | SIRI | GILBERTI LAWRENCE F (Director) | 45,962 | $2.9 | 45,962 (Direct) | View |
| 2007-08-15 Option Award | 2007-08-17 09:54 am | 2008-08-15 2017-08-15 | SIRIUS SATELLITE RADIO INC | SIRI | HOLDEN JAMES P (Director) | 45,962 | $2.9 | 45,962 (Direct) | View |
| 2007-08-15 | 2007-08-17 | 2008-08-15 | | | | | | | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Option Award | 09:54 am | 2017-08-15 | SIRIUS SATELLITE RADIO INC | SIRI | LIEBERFARB WARREN N (Director) | 45,962 | $2.9 | 45,962 (Direct) | | View |
| 2007-05-17 Option Award | 2007-05-21 4:08 pm | 2008-05-17 2017-05-17 | SIRIUS SATELLITE RADIO INC | SIRI | DONNELLY PATRICK L (EVP, General Counsel & Sec.) | 1,450,000 | $2.72 | 1,450,000 (Direct) | | View |
| 2007-02-01 Option Award | 2007-02-05 4:37 pm | 2008-02-01 2017-02-01 | SIRIUS SATELLITE RADIO INC | SIRI | Calderone Adrienne Elizabeth (SVP and Corporate Controller) | 64,000 | $3.7 | 64,000 (Direct) | | View |
| 2007-02-01 Option Award | 2007-02-05 4:37 pm | 2008-02-01 2017-02-01 | SIRIUS SATELLITE RADIO INC | SIRI | DONNELLY PATRICK L (EVP, General Counsel & Sec.) | 256,000 | $3.7 | 256,000 (Direct) | | View |
| 2007-02-01 Option Award | 2007-02-05 4:37 pm | 2008-02-01 2017-02-01 | SIRIUS SATELLITE RADIO INC | SIRI | FREAR DAVID J (EVP and CFO) | 307,000 | $3.7 | 307,000 (Direct) | | View |
| 2007-02-01 Option Award | 2007-02-05 4:37 pm | 2008-02-01 2017-02-01 | SIRIUS SATELLITE RADIO INC | SIRI | Greenstein Scott Andrew (Pres., Entertainment & Sports) | 435,000 | $3.7 | 435,000 (Direct) | | View |
| 2007-02-01 Option Award | 2007-02-05 4:37 pm | 2008-02-01 2017-02-01 | SIRIUS SATELLITE RADIO INC | SIRI | MEYER JAMES E (President, Sales & Operations) | 512,000 | $3.7 | 512,000 (Direct) | | View |
| 2006-12-11 Exercise | 2006-12-12 5:02 pm | 2004-07-01 2013-08-11 | SIRIUS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (Director Chairman of the Board) | 3,000,000 | $1.04 | 0 (Direct) | | View |
| 2006-12-11 Exercise | 2006-12-12 5:02 pm | 2004-03-15 2013-08-11 | SIRIUS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (Director Chairman of the Board) | 100,000 | $1.04 | 0 (Direct) | | View |
| 2006-11-10 Exercise | 2006-11-13 4:31 pm | 2004-05-05 2014-05-05 | SIRIUS SATELLITE RADIO INC | SIRI | Greenstein Scott Andrew (Pres., Entertainment & Sports) | 1,350,000 | $3.14 | 1,450,000 (Direct) | | View |
| 2006-11-10 Exercise | 2006-11-13 4:31 pm | 2004-05-05 2014-05-05 | SIRIUS SATELLITE RADIO INC | SIRI | MEYER JAMES E (President, Sales & Operations) | 1,200,000 | $3.14 | 600,000 (Direct) | | View |
| 2006-11-10 Exercise | 2006-11-13 4:31 pm | 2004-07-01 2013-08-11 | SIRIUS SATELLITE RADIO INC | SIRI | MEYER JAMES E (President, Sales & Operations) | 100,000 | $1.04 | 100,000 (Direct) | | View |

**Goto page 0, 1, 2, 3, Next**

© 2005-2008 SecForm4.Com All rights reserved.
Archives: 2008 2007 2006 2005 2004 2003
Sun, 26 Oct 2008 02:19:46 -0500

SEC is the U.S. Securities and Exchange Commission. EDGAR is a trademark of the SEC.
SecForm4.Com is not affiliated with or approved by the U.S. Securities and Exchange Commission (SEC).
Terms of Use | Privacy Statement |



Case 8:08-cv-00790-CJC-AN   Document 33   Filed 10/28/08   Page 65 of 73   Page ID #:421

Chairman of the Board)

**Other transactions:**

| Transaction & Date | Reported Date | Company | Symbol | Insider Relationship | Shares Traded | Average Price | Total Amount | Shares Ownership | Filing |
|---|---|---|---|---|---|---|---|---|---|
| 2006-11-10 Exercise | 2006-11-13 4:31 pm | SIRIUS SATELLITE RADIO INC | SIRI | DONNELLY PATRICK L (EVP, General Counsel & Sec.) | 1,733,334 | $1.04 | $1,802,667 | 2,479,595 (Direct) | View |
| 2006-01-10- -2006-08-21 Gift | 2006-08-22 4:39 pm | SIRIUS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (Director Chairman of the Board) | 450,000 | $0 | $0 | 2,522,260 (Direct) | View |
| 2006-05-24 Option Award | 2006-05-31 4:17 pm | SIRIUS SATELLITE RADIO INC | SIRI | LIEBERFARB WARREN N (Director) | 11,159 | $0 | $0 | 85,397 (Direct) | View |
| 2006-05-24 Option Award | 2006-05-31 3:50 pm | SIRIUS SATELLITE RADIO INC | SIRI | BLACK LEON D (Director) | 11,159 | $0 | $0 | 47,425 (Direct) | View |
| 2006-05-24 Option Award | 2006-05-31 3:50 pm | SIRIUS SATELLITE RADIO INC | SIRI | GILBERTI LAWRENCE F (Director) | 11,159 | $0 | $0 | 146,710 (Direct) | View |
| 2006-05-24 Option Award | 2006-05-31 3:50 pm | SIRIUS SATELLITE RADIO INC | SIRI | HOLDEN JAMES P (Director) | 11,159 | $0 | $0 | 140,672 (Direct) | View |
| 2006-05-24 Option Award | 2006-05-31 3:50 pm | SIRIUS SATELLITE RADIO INC | SIRI | MCGUINESS MICHAEL (Director) | 11,159 | $0 | $0 | 78,772 (Direct) | View |
| 2006-05-24 Option Award | 2006-05-31 3:50 pm | SIRIUS SATELLITE RADIO INC | SIRI | MOONEY JAMES (Director) | 11,159 | $0 | $0 | 92,070 (Direct) | View |
| 2006-04-16 Option Award | 2006-04-17 4:28 pm | SIRIUS SATELLITE RADIO INC | SIRI | MEYER JAMES E (President, Sales & Operations) | 300,000 | $0 | $0 | 1,153,699 (Direct) | View |
| 2006-02-01 Option Award | 2006-02-03 2:11 pm | SIRIUS SATELLITE RADIO INC | SIRI | DONNELLY PATRICK L (EVP, General Counsel & Sec.) | 35,026 | $0 | $0 | 1,288,437 (Direct) | View |
| 2006-02-01 Option Award | 2006-02-03 2:11 pm | SIRIUS SATELLITE RADIO INC | SIRI | FREAR DAVID J (EVP and CFO) | 39,405 | $0 | $0 | 997,109 (Direct) | View |
| 2006-02-01 Option Award | 2006-02-03 2:11 pm | SIRIUS SATELLITE RADIO INC | SIRI | Greenstein Scott Andrew (Pres., Entertainment & Sports) | 61,296 | $0 | $0 | 1,740,379 (Direct) | View |
| 2006-02-01 Option Award | 2006-02-03 2:11 pm | SIRIUS SATELLITE RADIO INC | SIRI | MEYER JAMES E (President, Sales & Operations) | 70,053 | $0 | $0 | 1,206,355 (Direct) | View |
| 2005-12-27 Exercise | 2005-12-28 1:05 pm | SIRIUS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (Director Chairman of the Board) | 600,000 | $1.04 | $624,000 | 5,703,761 (Direct) | View |
| 2005-11-28 Exercise | 2005-11-29 5:00 pm | SIRIUS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (Director Chairman of the Board) | 600,000 | $1.04 | $624,000 | 5,703,761 (Direct) | View |
| 2005-10-31 Exercise | 2005-11-01 4:18 pm | SIRIUS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (Director Chairman of the Board) | 600,000 | $1.04 | $624,000 | 5,703,761 (Direct) | View |
| 2005-09-26 Exercise | 2005-09-27 4:35 pm | SIRIUS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (Director Chairman of the Board) | 600,000 | $1.04 | $624,000 | 5,703,761 (Direct) | View |
| 2005-08-29 Exercise | 2005-08-30 4:37 pm | SIRIUS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (Director Chairman of the Board) | 600,000 | $1.04 | $624,000 | 5,703,761 (Direct) | View |
| 2005-08-10 Option Award | 2005-08-11 4:10 pm | SIRIUS SATELLITE RADIO INC | SIRI | FREAR DAVID J (EVP and CFO) | 300,000 | $0 | $0 | 957,704 (Direct) | View |
| 2005-08-08 Option Award | 2005-08-11 4:10 pm | SIRIUS SATELLITE RADIO INC | SIRI | Greenstein Scott Andrew (Pres., Entertainment & Sports) | 462,222 | $0 | $0 | 1,728,913 (Direct) | View |
| 2005-08-09 Option Award | 2005-08-11 4:10 pm | SIRIUS SATELLITE RADIO INC | SIRI | MEYER JAMES E (President, Sales & Operations) | 48,067 | $0 | $0 | 1,136,302 (Direct) | View |
| 2005-07-25 Exercise | 2005-07-27 4:23 pm | SIRIUS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (Director Chairman of the Board) | 600,000 | $1.04 | $624,000 | 5,703,761 (Direct) | View |
| 2005-05-25 Option Award | 2005-07-08 2:35 pm | SIRIUS SATELLITE RADIO INC | SIRI | MCGUINESS MICHAEL (Director) | 6,531 | $0 | $0 | 67,613 (Direct) | View |
| 2005-05-25 Option Award | 2005-07-08 2:35 pm | SIRIUS SATELLITE RADIO INC | SIRI | MOONEY JAMES (Director) | 6,531 | $0 | $0 | 80,911 (Direct) | View |

**Stock options: Exercise, Award, Grant, Conversion**

| Transaction & Date | Reported Date | Exercisable Expiration | Company | Symbol | Insider Relationship | Shares Traded | Conversion Price | Shares Ownership | Filing |
|---|---|---|---|---|---|---|---|---|---|
| 2006-11-10 Exercise | 2006-11-13 4:31 pm | 2004-07-01 2013-08-11 | SIRIUS SATELLITE RADIO INC | SIRI | DONNELLY PATRICK L (EVP, General Counsel & Sec.) | 533,334 | $1.04 | 16,666 (Direct) | View |
| 2006-11-10 Exercise | 2006-11-13 4:31 pm | 2004-03-15 2013-08-11 | SIRIUS SATELLITE RADIO INC | SIRI | DONNELLY PATRICK L (EVP, General Counsel & Sec.) | 1,200,000 | $1.04 | 0 (Direct) | View |
| 2006-08-03 Option Award | 2006-08-07 2:52 pm | 2007-08-03 2016-08-03 | SIRIUS SATELLITE RADIO INC | SIRI | Calderone Adrienne Elizabeth (SVP and Corporate Controller) | 80,000 | $4.02 | 80,000 (Direct) | View |
| 2006-05-24 Option Award | 2006-05-31 4:17 pm | 2007-05-24 2016-05-24 | SIRIUS SATELLITE RADIO INC | SIRI | LIEBERFARB WARREN N (Director) | 11,326 | $3.9 | 11,326 (Direct) | View |
| 2006-05-24 Option Award | 2006-05-31 3:50 pm | 2007-05-24 2016-05-24 | SIRIUS SATELLITE RADIO INC | SIRI | BLACK LEON D (Director) | 11,326 | $3.9 | 11,326 (Direct) | View |
| 2006-05-24 Option Award | 2006-05-31 3:50 pm | 2007-05-24 2016-05-24 | SIRIUS SATELLITE RADIO INC | SIRI | GILBERTI LAWRENCE F (Director) | 11,326 | $3.9 | 11,326 (Direct) | View |
| 2006-05-24 Option Award | 2006-05-31 3:50 pm | 2007-05-24 2016-05-24 | SIRIUS SATELLITE RADIO INC | SIRI | HOLDEN JAMES P (Director) | 11,326 | $3.9 | 11,326 (Direct) | View |
| 2006-05-24 Option Award | 2006-05-31 3:50 pm | 2007-05-24 2016-05-24 | SIRIUS SATELLITE RADIO INC | SIRI | MCGUINESS MICHAEL (Director) | 11,326 | $3.9 | 11,326 (Direct) | View |
| 2006-05-24 Option Award | 2006-05-31 3:50 pm | 2007-05-24 2016-05-24 | SIRIUS SATELLITE RADIO INC | SIRI | MOONEY JAMES (Director) | 11,326 | $3.9 | 11,326 (Direct) | View |
| 2006-02-01 Option Award | 2006-02-03 2:11 pm | 2007-02-01 2016-02-01 | SIRIUS SATELLITE RADIO INC | SIRI | DONNELLY PATRICK L (EVP, General Counsel & Sec.) | 120,000 | $5.71 | 120,000 (Direct) | View |
| 2006-02-02 Option Award | 2006-02-03 2:11 pm | 2007-02-02 2016-02-02 | SIRIUS SATELLITE RADIO INC | SIRI | MEYER JAMES E (President, Sales & Operations) | 1,350,000 | $5.54 | 1,350,000 (Direct) | View |
| 2005-12-27 Exercise | 2005-12-28 1:05 pm | 2004-03-15 2013-08-11 | SIRIUS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (Director Chairman of the Board) | 600,000 | $1.04 | 100,000 (Direct) | View |
| 2005-11-28 Exercise | 2005-11-29 5:00 pm | 2004-03-15 2013-08-11 | SIRIUS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (Director Chairman of the Board) | 600,000 | $1.04 | 700,000 (Direct) | View |
| 2005-10-31 Exercise | 2005-11-01 4:18 pm | 2004-03-15 2013-08-11 | SIRIUS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (Director Chairman of the Board) | 600,000 | $1.04 | 1,300,000 (Direct) | View |
| 2005-09-26 Exercise | 2005-09-27 4:35 pm | 2004-03-15 2013-08-11 | SIRIUS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (Director Chairman of the Board) | 600,000 | $1.04 | 1,900,000 (Direct) | View |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 2005-08-29 Exercise | 2005-08-30 4:37 pm | 2004-03-15 2013-08-11 | SIRIS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (Director) Chairman of the Board) | 600,000 | $1.04 | 2,500,000 (Direct) | View |
| 2005-08-10 Option Award | 2005-08-11 4:10 pm | 2006-08-10 2015-08-10 | SIRIS SATELLITE RADIO INC | SIRI | FREAR DAVID J (EVP and CFO) | 700,000 | $6.61 | 700,000 (Direct) | View |
| 2005-08-08 Option Award | 2005-08-11 4:10 pm | 2006-08-08 2015-08-08 | SIRIS SATELLITE RADIO INC | SIRI | Greenstein Scott Andrew (Pres., Entertainment & Sports) | 1,250,000 | $6.602 | 1,250,000 (Direct) | View |
| 2005-07-25 Exercise | 2005-07-27 4:23 pm | 2004-03-15 2013-08-11 | SIRIS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (Director) Chairman of the Board) | 600,000 | $1.04 | 3,100,000 (Direct) | View |
| 2005-05-25 Option Award | 2005-07-08 2:35 pm | 2006-05-25 2015-05-25 | SIRIS SATELLITE RADIO INC | SIRI | MCGUINESS MICHAEL (Director) | 7,307 | $5.64 | 7,307 (Direct) | View |
| 2005-05-25 Option Award | 2005-07-08 2:35 pm | 2006-05-25 2015-05-25 | SIRIS SATELLITE RADIO INC | SIRI | MOONEY JAMES (Director) | 7,307 | $5.64 | 7,307 (Direct) | View |

**Goto page Prev, 0, 1, 2, 3, Next**

© 2005-2008 SecForm4.Com All rights reserved.
Archives: 2008 2007 2006 2005 2004 2003
Sun, 26 Oct 2008 02:20:11 -0500

SEC is the U.S. Securities and Exchange Commission. EDGAR is a trademark of the SEC.
SecForm4.Com is not affiliated with or approved by the U.S. Securities and Exchange Commission (SEC).
Terms of Use | Privacy Statement |

Case 8:08-cv-00790-CJC-AN   Document 33   Filed 10/28/08   Page 67 of 73   Page ID #:423



Case 8:08-cv-00790-CJC-AN   Document 33   Filed 10/28/08   Page 68 of 73   Page ID #:424

| Transaction & Date | Reported Date | Company | Symbol | Insider Relationship | Shares Traded | | | Shares Ownership | Filing |
|---|---|---|---|---|---|---|---|---|---|
| 2005-06-27 Exercise | 2005-06-29 4:02 pm | SIRIUS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (Director)(Chairman of the Board) | 600,000 | $1.04 | $624,000 | 5,703,761 (Direct) | View |
| 2005-06-02 Exercise | 2005-06-03 11:59 am | SIRIUS SATELLITE RADIO INC | SIRI | GILBERTI LAWRENCE F (Director) | 10,000 | $3.5 | $35,000 | 134,982 (Direct) | View |
| 2005-05-31 Exercise | 2005-06-01 5:02 pm | SIRIUS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (Director)(Chairman of the Board) | 600,000 | $1.04 | $624,000 | 5,703,761 (Direct) | View |
| 2005-04-25 Exercise | 2005-04-25 4:26 pm | SIRIUS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (Director)(Chairman of the Board) | 600,000 | $1.04 | $624,000 | 5,703,761 (Direct) | View |
| 2004-07-13 Option Award | 2005-04-14 2:45 pm | SIRIUS SATELLITE RADIO INC | SIRI | MOONEY JAMES (Director) | 7,000 | $2.66 | $18,620 | 9,100 (Direct) | View |
| 2005-03-11 Option Award | 2005-03-14 4:24 pm | SIRIUS SATELLITE RADIO INC | SIRI | MEYER JAMES E (President, Sales & Operations) | 100,000 | $0 | $0 | 1,267,870 (Direct) | View |
| 2005-03-07 Option Award | 2005-03-08 4:05 pm | SIRIUS SATELLITE RADIO INC | SIRI | MEYER JAMES E (President, Operations & Sales) | 33,445 | $0 | $0 | 1,167,870 (Direct) | View |
| 2005-03-07 Option Award | 2005-03-08 4:04 pm | SIRIUS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (Director)(Chairman of the Board) | 50,168 | $0 | $0 | 5,103,761 (Direct) | View |
| 2005-03-07 Option Award | 2005-03-08 4:04 pm | SIRIUS SATELLITE RADIO INC | SIRI | FREAR DAVID J (EVP and CFO) | 24,905 | $0 | $0 | 657,704 (Direct) | View |
| 2005-03-07 Option Award | 2005-03-08 4:04 pm | SIRIUS SATELLITE RADIO INC | SIRI | DONNELLY PATRICK L (EVP, General Counsel & Sec.) | 26,914 | $0 | $0 | 1,253,411 (Direct) | View |
| 2005-03-07 Option Award | 2005-03-08 4:04 pm | SIRIUS SATELLITE RADIO INC | SIRI | Greenstein Scott Andrew (Pres., Entertainment & Sports) | 33,445 | $0 | $0 | 1,478,072 (Direct) | View |
| 2005-01-10 Exercise | 2005-01-11 9:06 pm | SIRIUS SATELLITE RADIO INC | SIRI | APOLLO ADVISORS IV LP APOLLO OVERSEAS PARTNERS IV LP APOLLO INVESTMENT FUND IV LP APOLLO MANAGEMENT IV LP (10% owner) | 39,538,505 | $0.9915 | $39,201,718 | 157,107,857 (Indirect) | View |
| 2004-12-23 Exercise | 2004-12-23 3:58 pm | SIRIUS SATELLITE RADIO INC | SIRI | DONNELLY PATRICK L (EVP, General Counsel & Sec.) | 750,000 | $1.04 | $780,000 | 1,990,762 (Direct) | View |
| 2004-12-22 Exercise Gift | 2004-12-23 3:58 pm | SIRIUS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (Director)(Chairman of the Board) | 2,150,000 | $0.9674 | $2,080,000 | 15,000 (Direct Indirect) | View |
| 2004-12-03 Exercise | 2004-12-03 5:00 pm | SIRIUS SATELLITE RADIO INC | SIRI | MEYER JAMES E (President, Operations & Sales) | 1,000,000 | $3.14 | $3,140,000 | 2,134,425 (Direct) | View |
| 2004-12-03 Exercise | 2004-12-03 5:00 pm | SIRIUS SATELLITE RADIO INC | SIRI | FREAR DAVID J (EVP and CFO) | 250,000 | $1.85 | $462,500 | 882,799 (Direct) | View |
| 2004-11-18 Option Award | 2004-11-22 1:05 pm | SIRIUS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (Director)(Chairman of the Board) | 500,000 | $0 | $0 | 5,097,602 (Direct) | View |
| 2004-11-18 Option Award | 2004-11-22 1:05 pm | SIRIUS SATELLITE RADIO INC | SIRI | KARMAZIN MEL (CEO)(Director) | 3,000,000 | $0 | $0 | 3,000,000 (Direct) | View |
| 2004-07-12 Option Award | 2004-07-14 12:11 pm | SIRIUS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (CEO)(Director) | 10,000 | $2.7 | $27,000 | 165,000 (Indirect) | View |
| 2004-06-17 Option Award | 2004-06-21 3:57 pm | SIRIUS SATELLITE RADIO INC | SIRI | BLACK LEON D (Director) | 29,735 | $0 | $0 | 29,735 (Direct) | View |
| 2004-06-17 Option Award | 2004-06-21 3:57 pm | SIRIUS SATELLITE RADIO INC | SIRI | HOLDEN JAMES P (Director) | 122,982 | $0 | $0 | 122,982 (Direct) | View |
| 2004-06-17 Option Award | 2004-06-21 3:57 pm | SIRIUS SATELLITE RADIO INC | SIRI | GILBERTI LAWRENCE F (Director) | 122,982 | $0 | $0 | 124,982 (Direct) | View |
| 2004-06-17 Option Award | 2004-06-21 3:57 pm | SIRIUS SATELLITE RADIO INC | SIRI | LIEBERFARB WARREN N (Director) | 67,707 | $0 | $0 | 67,707 (Direct) | View |
| 2004-06-17 Option Award | 2004-06-21 3:57 pm | SIRIUS SATELLITE RADIO INC | SIRI | MOONEY JAMES (Director) | 74,380 | $0 | $0 | 74,380 (Direct) | View |
| 2004-06-17 Option Award | 2004-06-21 3:57 pm | SIRIUS SATELLITE RADIO INC | SIRI | MCGUINESS MICHAEL (Director) | 61,082 | $0 | $0 | 61,082 (Direct) | View |
| 2005-05-05 Option Award | 2004-05-07 3:09 pm | SIRIUS SATELLITE RADIO INC | SIRI | Greenstein Scott Andrew (Pres., Entertainment & Sports) | 1,575,000 | $0 | $0 | 1,575,000 (Direct) | View |
| 2005-05-05 Option Award | 2004-05-07 3:09 pm | SIRIUS SATELLITE RADIO INC | SIRI | MEYER JAMES E (President, Operations & Sales) | 1,200,000 | $0 | $0 | 1,200,000 (Direct) | View |
| 2004-04-22 Option Award | 2004-04-22 2:53 pm | SIRIUS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (President & CEO)(Director) | 5,000 | $3.52 | $17,600 | 155,000 (Indirect) | View |
| 2004-04-02 Exercise | 2004-04-05 4:09 pm | SIRIUS SATELLITE RADIO INC | SIRI | DONNELLY PATRICK L (EVP, General Counsel & Sec.) | 300,000 | $1.04 | $312,000 | 1,540,762 (Direct) | View |
| 2004-03-24 Exercise | 2004-03-26 4:04 pm | SIRIUS SATELLITE RADIO INC | SIRI | RYAN MARY PATRICIA (EVP, Marketing) | 200,000 | $1.04 | $208,000 | 1,297,809 (Direct) | View |
| 2004-03-25 Exercise | 2004-03-26 4:04 pm | SIRIUS SATELLITE RADIO INC | SIRI | LAPLANTE JOSEPH (EVP, Programming) | 125,000 | $1.04 | $130,000 | 753,430 (Direct) | View |
| 2004-03-16 Exercise | 2004-03-18 10:57 am | SIRIUS SATELLITE RADIO INC | SIRI | RYAN MARY PATRICIA (EVP, Marketing) | 150,000 | $1.04 | $156,000 | 1,247,809 (Direct) | View |

## Stock options: Exercise, Award, Grant, Conversion

| Transaction & Date | Reported Date | Exercisable Expiration | Company | Symbol | Insider Relationship | Shares Traded | Conversion Price | Shares Ownership | Filing |
|---|---|---|---|---|---|---|---|---|---|
| 2005-05-25 Option Award | 2005-07-08 2:35 pm | 2006-05-25 2015-05-25 | SIRIUS SATELLITE RADIO INC | SIRI | BLACK LEON D (Director) | 7,307 | $5.64 | 7,307 (Direct) | View |
| 2005-05-25 Option Award | 2005-07-08 2:35 pm | 2006-05-25 2015-05-25 | SIRIUS SATELLITE RADIO INC | SIRI | GILBERTI LAWRENCE F (Director) | 7,307 | $5.64 | 7,307 (Direct) | View |
| 2005-05-25 Option Award | 2005-07-08 2:35 pm | 2006-05-25 2015-05-25 | SIRIUS SATELLITE RADIO INC | SIRI | HOLDEN JAMES P (Director) | 7,307 | $5.64 | 7,307 (Direct) | View |
| 2005-05-25 Option Award | 2005-07-08 2:35 pm | 2006-05-25 2015-05-25 | SIRIUS SATELLITE RADIO INC | SIRI | LIEBERFARB WARREN N (Director) | 7,307 | $5.64 | 7,307 (Direct) | View |
| 2005-06-27 Exercise | 2005-06-29 4:02 pm | 2006-03-15 2013-08-11 | SIRIUS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (Director)(Chairman of the Board) | 600,000 | $1.04 | 3,700,000 (Direct) | View |
| 2005-06-02 Exercise | 2005-06-03 11:59 am | 1995-06-27 2006-06-27 | SIRIUS SATELLITE RADIO INC | SIRI | GILBERTI LAWRENCE F (Director) | 10,000 | $3.5 | 0 (Direct) | View |
| 2005-05-31 Exercise | 2005-06-01 5:02 pm | 2004-03-15 2013-08-11 | SIRIUS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (Director)(Chairman of the Board) | 600,000 | $1.04 | 4,300,000 (Direct) | View |
| 2005-04-25 | 2005-04-25 | 2004-03-15 | SIRIUS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (Director) | 600,000 | $1.04 | 4,900,000 | View |

Case 8:08-cv-00790-CJC-AN   Document 33   Filed 10/28/08   Page 69 of 73   Page ID #:425

| | 4:26 pm | 2013-08-11 | | | Chairman of the Board) | | | (Direct) | |
|---|---|---|---|---|---|---|---|---|---|
| 2005-01-10 Exercise | 2005-01-11 9:06 pm | 2003-03-07 2005-03-20 | SIRIUS SATELLITE RADIO INC | SIRI | APOLLO ADVISORS IV LP APOLLO OVERSEAS PARTNERS IV LP APOLLO INVESTMENT FUND IV LP APOLLO MANAGEMENT IV LP (10% owner) | 18,166,677 | $0.92 | 0 (Indirect) | View |
| 2005-01-10 Exercise | 2005-01-11 9:06 pm | 2003-03-07 2005-03-20 | SIRIUS SATELLITE RADIO INC | SIRI | APOLLO ADVISORS IV LP APOLLO OVERSEAS PARTNERS IV LP APOLLO INVESTMENT FUND IV LP APOLLO MANAGEMENT IV LP (10% owner) | 27,250,013 | $1.04 | 0 (Indirect) | View |
| 2004-12-23 Exercise | 2004-12-23 3:58 pm | 2004-07-01 2013-08-11 | SIRIUS SATELLITE RADIO INC | SIRI | DONNELLY PATRICK L (EVP, General Counsel & Sec.) | 250,000 | $1.04 | 550,000 (Direct) | View |
| 2004-12-23 Exercise | 2004-12-23 3:58 pm | 2004-03-15 2013-08-11 | SIRIUS SATELLITE RADIO INC | SIRI | DONNELLY PATRICK L (EVP, General Counsel & Sec.) | 500,000 | $1.04 | 1,200,000 (Direct) | View |
| 2004-12-22 Exercise | 2004-12-23 3:58 pm | 2004-03-15 2013-08-11 | SIRIUS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (Director Chairman of the Board) | 2,000,000 | $1.04 | 5,500,000 (Direct) | View |
| 2004-12-03 Exercise | 2004-12-03 5:00 pm | 2004-05-05 2014-05-05 | SIRIUS SATELLITE RADIO INC | SIRI | MEYER JAMES E (President, Operations & Sales) | 1,000,000 | $3.14 | 1,800,000 (Direct) | View |
| 2004-12-03 Exercise | 2004-12-03 5:00 pm | 2004-03-15 2013-08-11 | SIRIUS SATELLITE RADIO INC | SIRI | FREAR DAVID J (EVP and CFO) | 250,000 | $1.85 | 750,000 (Direct) | View |
| 2004-11-18 Option Award | 2004-11-22 1:05 pm | 2004-11-18 2014-11-18 | SIRIUS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (Director Chairman of the Board) | 2,000,000 | $4.72 | 2,000,000 (Direct) | View |
| 2004-11-18 Option Award | 2004-11-22 1:05 pm | 2005-11-18 2014-11-17 | SIRIUS SATELLITE RADIO INC | SIRI | KARMAZIN MEL (CEO Director) | 30,000,000 | $4.72 | 30,000,000 (Direct) | View |
| 2004-06-17 Option Award | 2004-06-21 3:57 pm | 2005-05-25 2014-05-25 | SIRIUS SATELLITE RADIO INC | SIRI | BLACK LEON D (Director) | 14,281 | $3.02 | 14,281 (Direct) | View |
| 2004-06-17 Option Award | 2004-06-21 3:57 pm | 2004-11-25 2013-11-25 | SIRIUS SATELLITE RADIO INC | SIRI | BLACK LEON D (Director) | 20,537 | $2.1 | 20,537 (Direct) | View |
| 2004-06-17 Option Award | 2004-06-21 3:57 pm | 2005-05-25 2014-05-25 | SIRIUS SATELLITE RADIO INC | SIRI | HOLDEN JAMES P (Director) | 14,281 | $3.02 | 14,281 (Direct) | View |
| 2004-06-17 Option Award | 2004-06-21 3:57 pm | 2004-11-25 2013-11-25 | SIRIUS SATELLITE RADIO INC | SIRI | HOLDEN JAMES P (Director) | 20,537 | $2.1 | 20,537 (Direct) | View |
| 2004-06-17 Option Award | 2004-06-21 3:57 pm | 2005-05-25 2014-05-25 | SIRIUS SATELLITE RADIO INC | SIRI | GILBERTI LAWRENCE F (Director) | 14,281 | $3.02 | 14,281 (Direct) | View |
| 2004-06-17 Option Award | 2004-06-21 3:57 pm | 2004-11-25 2013-11-25 | SIRIUS SATELLITE RADIO INC | SIRI | GILBERTI LAWRENCE F (Director) | 20,537 | $2.1 | 20,537 (Direct) | View |
| 2004-06-17 Option Award | 2004-06-21 3:57 pm | 2005-05-25 2014-05-25 | SIRIUS SATELLITE RADIO INC | SIRI | LIEBERFARB WARREN N (Director) | 14,281 | $3.02 | 14,281 (Direct) | View |
| 2004-06-17 Option Award | 2004-06-21 3:57 pm | 2004-11-25 2013-11-25 | SIRIUS SATELLITE RADIO INC | SIRI | LIEBERFARB WARREN N (Director) | 20,537 | $2.1 | 20,537 (Direct) | View |
| 2004-06-17 Option Award | 2004-06-21 3:57 pm | 2005-05-25 2014-05-25 | SIRIUS SATELLITE RADIO INC | SIRI | MOONEY JAMES (Director) | 14,281 | $3.02 | 14,281 (Direct) | View |
| 2004-06-17 Option Award | 2004-06-21 3:57 pm | 2004-11-25 2013-11-25 | SIRIUS SATELLITE RADIO INC | SIRI | MOONEY JAMES (Director) | 20,537 | $2.1 | 20,537 (Direct) | View |
| 2004-06-17 Option Award | 2004-06-21 3:57 pm | 2005-05-25 2014-05-25 | SIRIUS SATELLITE RADIO INC | SIRI | MCGUINESS MICHAEL (Director) | 14,281 | $3.02 | 14,281 (Direct) | View |
| 2004-06-17 Option Award | 2004-06-21 3:57 pm | 2004-11-25 2013-11-25 | SIRIUS SATELLITE RADIO INC | SIRI | MCGUINESS MICHAEL (Director) | 20,537 | $2.1 | 20,537 (Direct) | View |
| 2004-05-05 Option Award | 2004-05-07 3:09 pm | 2004-05-05 2014-05-05 | SIRIUS SATELLITE RADIO INC | SIRI | Greenstein Scott Andrew (Pres., Entertainment & Sports) | 2,800,000 | $3.14 | 2,800,000 (Direct) | View |
| 2004-05-05 Option Award | 2004-05-07 3:09 pm | 2004-05-05 2014-05-05 | SIRIUS SATELLITE RADIO INC | SIRI | MEYER JAMES E (President, Operations & Sales) | 2,800,000 | $3.14 | 2,800,000 (Direct) | View |
| 2004-04-02 Exercise | 2004-04-05 4:09 pm | 2004-03-15 2013-08-11 | SIRIUS SATELLITE RADIO INC | SIRI | DONNELLY PATRICK L (EVP, General Counsel & Sec.) | 300,000 | $1.04 | 1,700,000 (Direct) | View |
| 2004-03-24 Exercise | 2004-03-26 4:04 pm | 2004-03-15 2013-08-11 | SIRIUS SATELLITE RADIO INC | SIRI | RYAN MARY PATRICIA (EVP, Marketing) | 200,000 | $1.04 | 1,400,000 (Direct) | View |
| 2004-03-25 Exercise | 2004-03-26 4:04 pm | 2004-03-15 2013-08-11 | SIRIUS SATELLITE RADIO INC | SIRI | LAPLANTE JOSEPH (EVP, Programming) | 125,000 | $1.04 | 750,000 (Direct) | View |
| 2004-03-16 Exercise | 2004-03-18 10:57 am | 2004-03-15 2013-08-11 | SIRIUS SATELLITE RADIO INC | SIRI | RYAN MARY PATRICIA (EVP, Marketing) | 150,000 | $1.04 | 1,600,000 (Direct) | View |

**Goto page Prev, 0, 1, 2, 3, Next**

© 2005-2008 SecForm4.Com All rights reserved.    SEC is the U.S. Securities and Exchange Commission. EDGAR is a trademark of the SEC.
Archives: 2008 2007 2006 2005 2004 2003    SecForm4.Com is not affiliated with or approved by the U.S. Securities and Exchange Commission (SEC).
Sun, 26 Oct 2008 02:20:37 -0500    Terms of Use | Privacy Statement |



| Option Award | 10:36 am | | SIRIUS SATELLITE RADIO INC | SIRI | (EVP, Marketing) | 1,050,000 | $0 | $0 (Direct) | View |

**Stock options: Exercise, Award, Grant, Conversion**

| Transaction & Date | Reported Date | Exercisable Expiration | Company | Symbol | Insider Relationship | Shares Traded | Conversion Price | Shares Ownership | Filing |
|---|---|---|---|---|---|---|---|---|---|
| 2004-03-15 Exercise | 2004-03-17 3:52 pm | 2004-03-15 2013-08-11 | SIRIUS SATELLITE RADIO INC | SIRI | LAPLANTE JOSEPH (EVP, Programming) | 125,000 | $1.04 | 875,000 (Direct) | View |
| 2001-11-26 Option Award | 2004-03-16 2:25 pm | 2004-11-26 2014-11-26 | SIRIUS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (President & CEO Director) | 750,000 | $5.25 | 750,000 (Direct) | View |
| 2001-11-26 Option Award | 2004-03-16 2:25 pm | 2003-11-26 2013-11-26 | SIRIUS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (President & CEO Director) | 750,000 | $5.25 | 750,000 (Direct) | View |
| 2001-11-26 Option Award | 2004-03-16 2:25 pm | 2002-11-26 2012-11-26 | SIRIUS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (President & CEO Director) | 750,000 | $5.25 | 750,000 (Direct) | View |
| 2001-11-26 Option Award | 2004-03-16 2:25 pm | 2001-11-26 2011-11-26 | SIRIUS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (President & CEO Director) | 750,000 | $5.25 | 750,000 (Direct) | View |
| 2003-12-03 Option Award | 2003-12-03 4:23 pm | 2004-03-15 2013-10-20 | SIRIUS SATELLITE RADIO INC | SIRI | LEDFORD MICHAEL S (EVP, Engineering) | 1,500,000 | $1.04 | 1,500,000 (Direct) | View |
| 2003-12-03 Option Award | 2003-12-03 4:23 pm | 2004-07-01 2013-08-11 | SIRIUS SATELLITE RADIO INC | SIRI | LEDFORD MICHAEL S (EVP, Engineering) | 600,000 | $1.04 | 600,000 (Direct) | View |
| 2003-10-20 Option Award | 2003-10-21 11:26 am | 2005-03-15 2013-10-20 | SIRIUS SATELLITE RADIO INC | SIRI | JOHNSON GUY D (EVP, Sales & Product Planning) | 500,000 | $1.04 | 500,000 (Direct) | View |
| 2003-10-20 Option Award | 2003-10-21 11:26 am | 2004-03-15 2013-10-20 | SIRIUS SATELLITE RADIO INC | SIRI | JOHNSON GUY D (EVP, Sales & Product Planning) | 1,500,000 | $1.04 | 1,500,000 (Direct) | View |
| 2003-08-11 Option Award | 2003-08-12 10:36 am | 2004-07-01 2013-08-11 | SIRIUS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (President & CEO Director) | 3,000,000 | $1.04 | 3,000,000 (Direct) | View |
| 2003-08-11 Option Award | 2003-08-12 10:36 am | 2004-03-15 2013-08-11 | SIRIUS SATELLITE RADIO INC | SIRI | CLAYTON JOSEPH P (President & CEO Director) | 7,500,000 | $1.04 | 7,500,000 (Direct) | View |
| 2003-08-11 Option Award | 2003-08-12 10:36 am | 2004-07-01 2013-08-11 | SIRIUS SATELLITE RADIO INC | SIRI | DONNELLY PATRICK L (EVP, General Counsel & Sec.) | 800,000 | $1.04 | 800,000 (Direct) | View |
| 2003-08-11 Option Award | 2003-08-12 10:36 am | 2004-03-15 2013-08-11 | SIRIUS SATELLITE RADIO INC | SIRI | DONNELLY PATRICK L (EVP, General Counsel & Sec.) | 2,000,000 | $1.04 | 2,000,000 (Direct) | View |
| 2003-08-11 Option Award | 2003-08-12 10:36 am | 2004-07-01 2013-08-11 | SIRIUS SATELLITE RADIO INC | SIRI | FREAR DAVID J (EVP and CFO) | 400,000 | $1.85 | 400,000 (Direct) | View |
| 2003-08-11 Option Award | 2003-08-12 10:36 am | 2004-03-15 2013-08-11 | SIRIUS SATELLITE RADIO INC | SIRI | FREAR DAVID J (EVP and CFO) | 1,000,000 | $1.85 | 1,000,000 (Direct) | View |
| 2003-08-11 Option Award | 2003-08-12 10:36 am | 2004-07-01 2013-08-11 | SIRIUS SATELLITE RADIO INC | SIRI | LAPLANTE JOSEPH (EVP, Programming) | 400,000 | $1.04 | 400,000 (Direct) | View |
| 2003-08-11 Option Award | 2003-08-12 10:36 am | 2004-03-15 2013-08-11 | SIRIUS SATELLITE RADIO INC | SIRI | LAPLANTE JOSEPH (EVP, Programming) | 1,000,000 | $1.04 | 1,000,000 (Direct) | View |
| 2003-08-11 Option Award | 2003-08-12 10:36 am | 2004-07-01 2013-08-11 | SIRIUS SATELLITE RADIO INC | SIRI | RYAN MARY PATRICIA (EVP, Marketing) | 700,000 | $1.04 | 700,000 (Direct) | View |
| 2003-08-11 Option Award | 2003-08-12 10:36 am | 2004-03-15 2013-08-11 | SIRIUS SATELLITE RADIO INC | SIRI | RYAN MARY PATRICIA (EVP, Marketing) | 1,750,000 | $1.04 | 1,750,000 (Direct) | View |

**Goto page Prev, 0, 1, 2, 3**

© 2005-2008 SecForm4.Com All rights reserved.
Archives: 2008 2007 2006 2005 2004 2003
Sun, 26 Oct 2008 02:20:55 -0500

SEC is the U.S. Securities and Exchange Commission. EDGAR is a trademark of the SEC.
SecForm4.Com is not affiliated with or approved by the U.S. Securities and Exchange Commission (SEC).
Terms of Use | Privacy Statement |

**PROOF OF SERVICE**

I am employed in the County of Orange, State of California. I am over the age of 18 years and not a party to the within action. My business address is **HORWITZ, CRON & JASPER, PLC,   FOUR VENTURE PLAZA, SUITE 390, IRVINE, CA 92618**

On October 28, 2008 I served the foregoing document described as **VERIFIDED FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, BREACH OF FIDUCIARY DUTY, AND THE SHERMAN ACT** on the interested parties in this action.

[ xx ] by placing the original and/or a true copy thereof enclosed in (a) sealed envelope(s), addressed as follows:

**SEE ATTACHED MAILING LIST**

[XX ]**BY REGULAR MAIL:** I deposited such envelope in the mail at 4 Venture Plaza, Irvine, California. The envelope was mailed with postage thereon fully prepaid.

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than (1) day after date of deposit for mailing in affidavit.

**BY THE ACT OF FILING OR SERVICE, THAT THE DOCUMENT WAS PRODUCED ON PAPER PURCHASED AS RECYCLED.**

[ ] **BY FACSIMILE MACHINE:** I Tele-Faxed a copy of the original document to the above facsimile numbers.

[ ] **BY OVERNIGHT MAIL:** I deposited such documents at the Federal Express Drop Box located at 4 Venture Plaza, Irvine, California 92618. The envelope was deposited with delivery fees thereon fully prepaid.

[ ] **BY PERSONAL SERVICE:** I caused such envelope(s) to be delivered by hd to the above addressee(s).

[XX ] (State) I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

[ ] (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.

Executed on October 28, 2008  at Irvine, California

_____

**Bonne Lyons**
Declarant

---

- 1 –
**PROOF OF SERVICE**

### PROOF OF SERVICE MAILING LIST
### HARTLEIB V. SIRIUS SATELLITE RADIO, INC., ETC.
### USDC CASE NO: SACV08-00790 CJC (ANx)

| | |
|---|---|
| Chet A. Kronenberg, Esq. *(ckronenberg@stblaw.com)*<br>Deborah L. Stein, Esq. *(dstein@stblaw.com)*<br>SIMPSON THACHER & BARLETT LLP<br>1999 Avenue of the<br>Stars, 29th Floor<br>Los Angeles, CA 90067<br>Telephone:  (310) 407-7500<br>Facsimile:   (310) 407-7502 | Attorneys for Defendant<br>SIRIUS  SATELLITE RADIO, INC. |
| Michael L. Charlson, Esq.<br>*(Michael.Charlson@hellerehrman.com)*<br>HELLER EHRMAN, LLP<br>275 Middlefield Road<br>Menlo Park, CA  94025-3506<br>Telephone: (650) 324-7000<br>Facsimile: (650) 324-0638 | |
| Paul B. Salvaty, Esq.<br>*(psalvaty@omm.com)*<br>O'Melveny & Myers, LLP<br>400 South Hope Street<br>Los Angeles, CA 90071-2899<br>Telephone:  (213) 430-6000<br>Facsimile:  (213) 430-6407 | |