Michael Hartleib
PO Box 7078
Laguna Niguel
CA 92617
Pro Se

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL HARTLEIB | ) Case No. SACV 08-00790-CJC(AN) |
| | ) |
| Plaintiff | ) REQUEST FOR CONTINUANCE OR |
| | ) STAY TO EXTEND TIME TO FILE |
| v. | ) AN AMENDED COMPLAINT IN |
| SIRIUS SATELLITE RADIO, et al | ) RESPONSE TO THE COURT'S |
| | ) ORDER DISMISSING PLAINTIFF'S |
| | ) AMENDED COMPLAINT WITHOUT |
| Defendant | ) PREJUDICE AND WITH LEAVE |
| | ) TO AMEND |
| | ) |
| | ) Date: |
| | ) Time: |
| | ) Honorable Cormac J. Carney |
| | ) Courtroom: 9B |

PLEASE TAKE NOTICE that Michael Hartleib, Plaintiff, hereby requests this Court for

a second extension of time or stay to file his Response to the Court's Order, dated

December 23, 2008, dismissing Plaintiff's Amended Complaint without Prejudice and

With Leave to Amend which, pursuant to the Court's Order of December 23, 2008 and in

accordance with Federal Rule of Civil Procedure 6, is currently due on February 8, 2009.

Due to the brief amount of time Plaintiff has to file his Amended Complaint, plaintiff

requests a Stay or an Extension of time to file his Amended Complaint. In support of his

Request , Plaintiff respectfully submits the accompanying *Memorandum in Support of*

*Plaintiff's Request for Continuance or Stay.*

WHEREFORE, Plaintiff requests that the Court enter an Order granting Plaintiff a Stay or Extension of time to file his Amended Complaint.

Dated:  January 29, 2009

By:  _____

Michael Hartleib

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL HARTLEIB | ) Case No. SACV 08-00790-CJC(ANx) |
| | ) |
| Plaintiff | ) MEMORANDUM IN SUPPORT OF |
| | ) PLAINTIFF'S REQUEST FOR |
| v. | ) CONTINUANCE OR STAY |
| SIRIUS SATELLITE RADIO, et al | ) |
| | ) |
| Defendant | ) |
| | ) |
| | ) Date: |
| | ) Time: |
| | ) Honorable Cormac J. Carney |
| | ) Courtroom: 9B |

I, Michael Hartleib, pro se, submit the following Memorandum In Support Of

Plaintiff's Request for Continuance or Stay.

**Introduction**

Pursuant to Federal Rules of Civil Procedure 12(b)(6), 23.1 and 12(b)(9), defendants,

Sirius XM Satellite Radio, Interoperable Technologies LLC and their officers and

directors moved to dismiss plaintiff's case which alleges violations of the Federal

Racketeering and Corrupt Organizations Act ("RICO"), breach of fiduciary duty, and

violations of Anti-Trust Laws including the Sherman Act. Defendants' Motion was

granted and case was Dismissed with Leave to Amend. As the court is aware, these issues

are complex and require extensive review by future counsel.  Plaintiff is and has been

actively pursuing new counsel.  Several firms, although interested, were unable to begin

due diligence until after January 15, 2009 due to the holiday season.

1

Plaintiff has made formal demand for inspection of books and records under Delaware Law Statute 220. **(EXHIBIT A)** The purpose of this demand is to investigate possible violations of law including the companies' failure to comply with their FCC Licensing Mandate and violations of FCC Rules and Regulations that culminated in a twenty million dollar fine ($20,000,000) against Sirius and XM and to determine whether the companies' officers and directors are independent and/or disinterested and whether they have acted in good faith.

Plaintiff seeks a stay or continuance on current proceedings as he pursues a court ordered inspection of books and records under the laws of Delaware, Statute 220.

## Statement of Facts

In the Order granting the Motion to Dismiss with Leave to Amend dated December 4, 2008, it was stated plaintiff failed to create a reasonable doubt that a majority of the "current board of directors would not be able to respond disinterestedly to a demand from Mr. Hartleib". Plaintiff wishes to advise the court that prior counsel failed to bring forth facts that the court may deem relevant: all "current" members of the board for the combined entity of Sirius XM have been and/or continue to be directors of either Sirius or XM prior to, during, and after consummation of the merger. Each current member of the board was a director at one of the pre-merged companies for a prolonged period of time. History of their board membership[s] are outlined as follows:

**Joan L. Amble** has been a director at Sirius since August 2008. From December 2006 to August 2008, Ms. Amble served as a director of XM Satellite Radio Inc. **Leon D. Black** has been a director at Sirius since June 2001. **Lawrence F. Gilberti** has been a director at Sirius since September

1993. **Eddy W. Hartenstein** has been a director at Sirius since August 2008. From May 2005 to August 2008 Mr. Hartenstein served as a director of XM Satellite Radio Inc. **James P. Holden** has been a director at Sirius since August 2001. **Chester A. Huber, Jr.,** has been a director at Sirius since August 2008. From January 2002 to August 2008, Mr. Huber served as a director of XM Satellite Radio Inc. **John W. Mendel** has been a director at Sirius since August 2008. From May 2005 to August 2008, Mr. Mendel served as a director of XM Satellite Radio Inc. **James F. Mooney** has been a director since July 2003. **Gary M. Parsons** has served as our Chairman of the Board of Directors at Sirius since August 2008. From May 1997 to August 2008, Mr. Parsons served as Chairman of the Board of Director of XM Satellite Radio Inc. **Jack Shaw** has been a director at Sirius since August 2008. From May 1997 to August 2008, Mr. Shaw served as a director of XM Satellite Radio Inc. **Jeffrey D. Zients** has been a director since August 2008. From May 2006 to August 2008, Mr. Zients has served as a director of XM Satellite Radio Inc. **Mel Karmazin** has been  Chief Executive Officer of SIRIUS XM Radio since November 2004.

In 2008, each company was cited and found in violation of FCC Rules and Regulations which resulted in  the second largest FCC fine in history, twenty million dollars ($20,000,000), second to Univision's twenty four million dollar fine ($24,000,000) and more than double that of the previous record high fine of nine million dollars ($9,000,000). The fine cannot be challenged as these board members agreed to a

3

Consent Decree based on the merits of their violations. The violations included: 1) receivers whose FM modulators' power limits exceeded the maximum allowed by the FCC, and 2) terrestrial repeater towers that were not placed in FCC mandated locations and were being operated for a number of years out of compliance with FCC Rules and Regulations.

Directors of the "current" board, which is a reshuffling of pre-merger directors from both Sirius and XM, approved and accepted financing to consummate the merger between Sirius and XM which included the issuance of three hundred million shares of the corporation's stock to be given to the financiers of XM's debt for the sole purpose of being sold "short" on the open market. This resulted in the diminution of shareholder value to the tune of billions of dollars (i.e. the share price dropped fifty percent on the days of consummation, July 29 and 30, 2008). The only way the financiers were willing to finance this debt was if they had no inherent risk. As the financiers issued three hundred million convertible bond offerings with a yield of thirteen percent, these bonds could be converted to common stock if the common stock price were to increase twenty percent or more, thereby, guaranteeing a twenty percent return on their initial investment and ensuring the return of their initial investment. In order to hedge their position and protect their initial investment and guarantee a thirteen percent yield, they needed three hundred million shares to be sold "short" which the Sirius board of directors authorized and provided. This financing has now nearly wiped out all shareholder value (over ninety-eight percent) and has put this company on the brink of bankruptcy.

)

**Arguments**

Federal Rule of Civil Procedure 23.1 sets out the pleading requirements for derivative actions as follows:

(3) state with particularity:

(A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and

(B) the reasons for not obtaining the action or not making the effort.

On December 17, 2007, Plaintiff made a written "formal demand" on Sirius current General Counsel, Patrick Donnelly in care of the board of directors, seeking with precision and specificity, details of the shareholder vote to approve the merger with XM. **(EXHIBIT B)** This "formal demand" was never acknowledged or responded to despite proof of receipt.

On November 22, 2008, Plaintiff made a "formal letter of demand" to Sirius General Counsel, Patrick Donnelly in care of the current board of directors, demanding the board take action, including the initiation of legal action against the current and past management teams and/or directors. **(EXHIBIT C)** Sirius General Counsel responded on December 5, 2008 advising the Board would address our "Save Sirius form letter" which purports the Board take certain action. **(EXHIBIT D)** It was then followed up with a letter dated December 16, 2008 in which the Board reviewed and considered the issues raised, they refused to postpone the Annual Stockholders Meeting and the vote to allow the issuance of 3.5 billion shares as well as approval for a one for fifty reverse split**. (EXHIBIT E)** The Board also issued millions of gifted shares to the management team just days after the annual meeting. Wherefore, by these actions the Board failed to

comply with Plaintiff's "Formal Demand" of November 22, 2008. Plaintiff is aware that it is not reasonable for a company's board of directors to be expected to act on any shareholder's whim and demand.  On the other hand, it is not reasonable for a board to receive proper demand, allege that they have considered it yet refuse to act on said demand. This renders a proper demand by a qualified shareholder meaningless and "without teeth." Since all of the current board members were directors of Sirius and XM during the time frame of the alleged wrongdoing, Plaintiff argues that it is not possible for this board to render a disinterested business judgment.   Therefore, there has been a sustained and/or systemic failure of the board to exercise over sight.

Defendants have denied Plaintiff's request for inspection of books and records under Delaware Law Statute 220, stating that "your request letter does not establish a 'proper purpose' … 'because you do not articulate the proper purpose of your inspection demand we assume it relates  to your present efforts to file an amended complaint against the company in the United States District Court for the Central District of California. However, as you are well aware,  the Court has now twice dismissed for lack of standing, and we do not believe you will be able to cure this deficiency. In this regard, courts in Delaware have held that "[i]f a books and records demand is to investigate wrongdoing and the [shareholder's] sole purpose is to pursue a derivative suit, the [shareholder] must have standing to pursue the underlying suit to have a proper purpose." **(EXHIBIT F)** Defendants' counsel cites *West Coast Mgm't & Capital, LLC v Carrier Access Corp*, 914 A.2d 636,641 (Del.Ch.2006) as the West Coast shareholders attempted to conduct a Section 220 inspection after their federal derivative claim was dismissed for failure to adequately plead demand futility. Counsel is off point with this case law as it is true Vice

Chancellor Lamb concluded that shareholders lacked a proper purpose under Section 220 however, what defendants' counsel fails to state in their letter denying plaintiff's request is that the Federal Judge in the *West Coast* case "specifically denied the plaintiffs request for leave to re-plead. With this explicit ruling in hand Vice Chancellor Lamb concluded that shareholders were estopped from re-litigating demand futility and **therefore**, lacked a proper purpose under Section 220.

Plaintiff intends to obtain specific information that will show that a majority of the directors' actions were *ultra vires* and were not the product of a valid business judgment. *Aronson v Lewis*, 473 A.2d 805 (Del. 1984). *USA, Inc. S'holders Litig.*, C.A. No. 1956-CC,207 WL 2419611, at *15 (Del.Ch. Aug.20, 2007) ("demand will be excused if a majority of the board that allegedly pursued the *ultra vires* action remains on the defendant board at the time demand is made").

Plaintiff intends to show that there was a sustained or systemic failure of the board to exercise oversight – a violation of the board's duty by way of bad faith. Plaintiff cannot affectively address his complaint and accusations against directors and officers through a derivative suit unless he can properly plead demand futility. Violations of loyalty and good faith described in *Caremark* can, in theory, excuse demand. *Stone v Ritter*, 911 A.2d 362, 372 (Del. 2006) (quoting *In re Caremark Int'l, Inc., Derivative Litig.*, 698 A.2d 959, 971 (Del. Ch. 1996)).

7

## Conclusion

Plaintiff has clearly presented evidence to suggest a credible basis for mismanagement, malfeasance, wrongdoing, and possible violation of law by defendants. Section 220 provides shareholders of Delaware corporations with a qualified right to inspect corporate books and records. In relevant part, the statute reads:

> Any stockholder, in person or by attorney or other agent, shall, upon written demand under oath stating the purpose thereof, have the right during the usual hours of business to inspect for any proper purpose, and to make copies and extracts from: (1) The corporation's stock ledger, a list of it stockholders, and its other books and records.

Plaintiff clearly states a "proper purpose" to demand inspection of books and records under Delaware Law Statute 220 and thereby respectfully asks this Court for its assistance to compel defendants to provide the requested books and records. *Melzer v CNET Networks, Inc.,* Case No. 3023-CC.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests this Court for its assistance to compel defendants to provide the requested books and records and grant a Continuance or Stay to provide Defendants time to facilitate Plaintiff's request.

Respectfully submitted,

Michael Hartleib, Pro Se

January 29, 2009

8

## CERTIFICATE OF SERVICE

I, Tijen Hartleib, hereby certify that a true copy of the foregoing *Plaintiff's Request For Continuance Or Stay* and a true copy of the foregoing *Memorandum In Support Of Plaintiff's Request For Continuance Or Stay*,

have been served by first class mail, postage prepaid, on this 29th day of January 2009 to:

Chet A. Kronenberg, Esq.
Deborah L. Stein, Esq.
Simpson Thacher & Bartlett LLP
1999 Avenue of the Stars 29th Floor
Los Angeles, CA 90067



Tijen Hartleib

9

# EXHIBIT  A

Copy

# Michael Hartleib
P.O. Box 7078
Laguna Niguel, CA 92607
(949) 283-2441

January 9, 2009


Sent Via Certified Mail

c/o Patrick Donnelly
The Board of Directors
Sirius Satellite Radio
1221 Avenue of the Americas
New York, NY 10020-1001

Re:   Formal demand for Inspection of Books and Records

Dear Mr. Donnelly:

I, Michael Hartleib, do hereby state under penalty of perjury that I am and  have been a shareholder in Sirius Satellite Radio since November 5, 2003.

I  hereby demand, as per § 220 of Delaware Law, from Sirius Satellite Radio as well as the wholly owned subsidiary, Interoperable Technologies LLC,  certified copies of the following:
- List of current shareholders
- All documents related to the Shareholder Vote approving the merger between Sirius and XM including documents from the tabulator and proxy firm of said vote
- All documents, including internal memorandums, regarding the companies' compliance with the FCC Interoperability Mandate
- All documents from Interoperable Technologies LLC regarding the development of interoperable radios and plans to market said devices. These documents are to include the white paper report by Michael Deluca which was held under double protective orders during the FCC merger proceedings and was withheld from the DOJ Anti-Trust Division
- Un-redacted draft of the Joint Development Agreement between Sirius and XM which led to the creation of Interoperable Technologies LLC
- Correspondence between Mr. Karmazin and Mr. Leon Black involving discussions of privatizing Sirius XM,  including any related internal memorandums.
- All correspondence between Sirius General Counsel, Patrick Donnelly and Simpson Bartlett and Thatcher in regards to the litigation entitled *"Gregory Brockwell v Sirius Satellite Radio"*

EXHIBIT A

Patrick Donnelly
January 9, 2009
Page 2

Pursuant to § 220 of Delaware Law, the foregoing documents are being requested for the benefit of Sirius XM Satellite Radio shareholders who have been and will continue to be damaged by the companies' current management. It has become clear that the Board of Directors, past and present, are being influenced by General Counsel for the Company, Patrick Donnelly, as well as Chief Executive Officer, Mel Karmazin, for their unjust enrichment and agendas at the expense of their shareholders.

Under current management, Sirius shareholders have lost over ninety eight percent (98%) of their value. This more than exceeds the Statute's requirement to allege mismanagement. The share price alone speaks for itself but this request is not based solely on the diminution of shareholder value.

Mr. Karmazin has stated publicly that he agreed to consummate the merger between Sirius and XM and accepted what he calls "toxic financing". This action cost shareholders fifty percent (50%) of their value in a matter of days. Mr. Karmazin has made it clear that his agenda was to consolidate the satellite radio spectrum at any and all cost, without consideration as to the harm it would cause the shareholders of the company.

Mr. Karmazin has also stated in the Wall Street Journal, after shareholders had lost eighty percent (80%) of their value, that he would "love to take the company private at these low prices, but where do you find the money in this environment". The Board should have demanded Mr. Karmazin's termination as it is clear his interests were to consolidate the satellite radio spectrum and then privatize the combined entity.

Mr. Karmazin has stated publicly that he was brought out of retirement by Mr. Leon Black, a current Board member of Sirius XM and founder of the private equity firm Apollo, which already has a number of satellite delivery systems under its ownership. It appears as though Mr. Leon Black and private equity may be able to acquire this company out of bankruptcy or, if not out of bankruptcy, for pennies on the dollar as management has run this company into the ground. There is a conflict of interest here.

Management of this company has lost all objectivity under the leadership of Mr. Karmazin and General Counsel, Patrick Donnelly, and have done nothing to enhance shareholder value.

Senator Brownback of Kansas, after reviewing the aforementioned white paper report from Michael Deluca of Interoperable Technologies LLC, accused Mr. Karmazin of being "less than candid" with members of Congress. These documents were wrongfully held under double protective orders by the FCC in an attempt to obfuscate the truth. The truth is, Sirius and XM colluded and conspired to restrain free trade and ignored their mandate to "commercially market interoperable radios". If interoperable radios were available to consumers, there would have been no need to merge these two companies as "a merger of equals".

Patrick Donnelly
January 9, 2009
Page 3

As per § 220 of Delaware Law, you have five (5) days to provide access to this documentation.

Sincerely,

Michael  Hartleib

MH/th

# EXHIBIT   **B**

# Michael Hartleib
P.O. Box 7078
Laguna Niguel, CA 92607
(949) 283-2441

December 17, 2007

c/o Patrick Donnelly
The Board of Directors
Sirius Satellite Radio
1221 Avenue of the Americas
New York, NY 10020-1001

Re:  Shareholder vote

Dear Mr. Donnelly

As you are aware, I have sought a meeting with you for <u>over six months</u>.  Despite written confirmation from Mr. Paul Blalock, and repeated messages left by me, no meeting has been granted as of today. Mr. Blalock has now informed me that the issues I have raised are out of his control and he will not be able to provide further information or address issues I raise.

Please consider this a formal request for total number of shares voted and the overall percentage of the recent shareholder vote. I formally request a re-count and certification of the shareholder vote by a nonbiased independent third party. Please advise me of the process required to accomplish this demand. I have contacted MacKenzie Partners Inc. and requested this information. I have been told by a Mr. Dan Sullivan that he cannot provide me with this information as per your instruction and has referred me back to you (ie: Sirius Counsel).
The point of having a third party proxy firm is to prevent conflicts of interest and guarantee fairness in the voting process. It is my opinion that when you are referred back to management of the company who retained the third party services the independence of this third party is then in question.

Mr. Sullivan informed me that the Bank of New York, your transfer agent, was responsible for the tabulation of the shareholder vote. I was unable to obtain the necessary answers or the name of the register manager. In fact, I was told they had no record of being the tabulator. It troubles me greatly that the transfer agent that is under a cloud of suspicion regarding naked shorting and possible regulation SHO violations is responsible for the accurate count and tabulation of this merger vote. I believe it would be in Sirius' best interest, as well as Shareholders', to solicit the services of a firm such as IVS Associates to recount and certify the vote.

*EXHIBIT B*

Sirius has provided a press release stating shareholders have approved the merger with XM. Preliminary tabulations indicate that more than 96% of Sirius shares voted were cast in favor of the merger. It is my opinion this is a willful omission of fact as a shareholder who wished to vote "No" on the merger need not cast his vote; a non-vote was a "Vote No". My concern is 96% of 50.2% etc may not meet the simple majority needed to consummate this merger. Also, Sirius outside counsel has used the following statement in a New York Superior Court legal proceeding: *"The Motion to Intervene is Moot Because Sirius and XM Stockholders Have Already Voted Overwhelmingly In Favor of the Merger and Because the Parties Have Settled This Litigation"* When I questioned counsel as to this factually incorrect statement provided to the Court he confirmed he had no idea as to the number of shares voted or the percentage. I informed him 96% of 50.2% is less than the 50.1% needed to consummate this merger.

I respectfully request a written response within five (5) days of receipt of this letter. I hope the information requested will be granted without further action.

Sincerely,


Michael  Hartleib


Cc: Joseph P. Clayton
     Mel Karmazin
     Leon D. Black
     James F. Mooney
     Michael J. McGuiness
     Warren N. Lieberfarb
     James P. Holden
     Lawrence  F. Gilberti

# EXHIBIT  C

# MICHAEL HARTLEIB

P.O. Box 7078
Laguna Niguel, CA 92607
949-795-0580

November 22, 2008

Gary Parsons                                           SENT CERTIFIED MAIL
Chairman of the Board
c/o Board of Directors
Sirius Satellite Radio, Inc.
1221 Avenue of the Americas
36th Floor
New York, NY 10020

Sub: **Formal Letter of Demand**

I, Michael Hartleib, a shareholder and  founder of the recently formed shareholders' group, *Save Sirius*
call on the Sirius XM Board of Directors to:

1) Postpone the vote that is asking shareholders to consider the further dilution and increase of
   shares from 4.5 billion to 8 billion in the fully diluted float
2) Postpone the proposed reverse split ranging from 1 for 10 to 1 for 50.
3) In light of the abysmal stock performance and dire financial situation, we demand that all stock
   and other bonuses be suspended immediately until the  return to these compensation plans
   would be commensurate with the concept of "performance based compensation"
4) Immediately release to the DOJ Anti-Trust Division and publicly disseminate all highly
   confidential documents that are or were under double protective orders at the FCC. The
   documents in question were submitted April 10, 2008 and include a report by Mr. Michael
   Deluca which outlines specific information regarding the company's compliance/lack of
   compliance with the Interoperability Mandate.  These documents provide evidence of a
   conspiracy and a "cover up" to restrain free trade.

Given the NASDAQ's reprieve of delisting securities below a dollar, there is time for this board to convene
an emergency meeting to consider other options, such as but not limited to, self-funding by shareholders.
This meeting must be held prior to the scheduled December 18, 2008 meeting. This will give the
Corporation time and means to obtain the additional funding from a position of strength and not from a
position of desperation.

I am calling on the board to indefinitely postpone the shareholder vote giving time for management and its
shareholders to address any and all viable options to prevent the massive amounts of dilution being
proposed by this board as well as the proposed reverse stock split. I demand the board grant me and all
interested parties,  a meeting to address alternatives that would be more in line with shareholders' interests.

If the board continues with the scheduled vote, not meeting my demands, I will hold them in violation of
their fiduciary duties and seek injunctive relief.

EXHIBIT C

Sirius Satellite Radio, Inc.
c/o Board of Directors
November 22, 2008
Page 2

**In light of the malfeasance of certain directors and officers of Sirius XM, it is hereby demanded that the Board of Directors of Sirius XM institute legal action on behalf of Sirius XM and exert all legal remedies belonging to the corporation. Such legal remedies are believed to include, but not limited to, causes of action under the RICO statutes, the Sherman act, breach of fiduciary duty, and common law fraud .**

As the board is aware, there are (RICO) charges pending before a Federal Court in California that accuse this board, past board members, and its executives of racketeering, breach of fiduciary duty as well as Sherman Act Violations. The conspiracy to withhold and commercially introduce interoperable radios, to obtain control of all of the SDARS spectrum and to consummate the merger between XM and Sirius at any and all cost, without consideration of the impact on the corporation and its shareholders, gives us cause to deem this board as well as **not fit** to make proper decisions on behalf of the shareholders.

It is inconceivable that this board would lock their shareholders into the longest merger delay in history without having already obtained the proper financing.  This board and CEO Mel Karmazin, publicly stated on multiple occasions that if this merger was not in the shareholders' best interest and "did not make sense", they would walk away.  The fact that the promises made to the shareholders were breached and that this merger was consummated under what Mr. Karmazin called "toxic terms"  has resulted in catastrophic losses (over 90%) in shareholder value. It should be noted that the "toxic terms"( included the issuance of 300 million shares of the Corporation stock to be given to the financiers of XM's debt for the sole purpose of being sold short on the open market).  It is clear that this board is self dealing and it has not fulfilled its fiduciary duty to shareholders.

This has been a well-orchestrated multi-year conspiracy to consolidate the SDARS spectrum which included willful violation of their licensing mandate as well as willful violation of their Joint Development Agreement. The final chapter in the conspiracy will be to privatize the combined entities thereby stealing it from its rightful owners, the shareholders.

Mr. Karmazin was brought out of retirement by Mr. Leon Black of Apollo, a member of the board. In a September 15th 2008 Wall Street Journal article written by Sarah McBride, she states,

> *"Given Sirius XM's low stock price, Mr. Karmazin said he would love to take the company private. But given the state of the credit markets, 'How do you find [the money] today?' If the company were generating positive cash flow, which he expects it to do for the full year in 2009, privatization would become much more feasible, he says."*

Sirius Satellite Radio, Inc.
c/o Board of Directors
November 22, 2008
Page 3


Given Mr. Karmazin's connection with Mr. Leon Black (founder of one of the largest private equity firms in the country), as well as comments made in his Wall Street Journal interview, it is obvious there are severe conflicts of interest between Mr. Karmazin, the board, and their shareholders. It is their goal to privatize this company that  is completely adverse to their fiduciary responsibility to enhance shareholder value.    To suggest privatization at these levels speaks for itself and the board should call for Mr. Karmazin's resignation. I am asking those board members who have been complicit in this conspiracy, to step up and perform their fiduciary duty to we the shareholders, by seeking an orderly replacement of our CEO.  I would like to take this opportunity to remind the board and executives of SiriusXM that they work for us. It is we, the shareholders, that own this company.

As stated above, if the board continues with the scheduled vote, not meeting my demands, I will hold them in violation of their fiduciary duties and seek injunctive relief. As time is of the essence, I expect a written response within five days from receipt of this letter. Your failure to respond accordingly will result in drafting of the required documents to seek a preliminary injunction.

Respectfully submitted,



Michael Hartleib

# EXHIBIT   **D**



# SIRIUS XM
### RADIO INC.

1221 Avenue of the Americas
New York, NY  10020
Tel:  212-584-5100
Fax: 212-584-5200
www.sirius.com

December 5, 2008

Mr. Michael Hartleib
24892 Hollow Cr.
Laguna Niguel, CA   92677

Mr. Hartleib,

      I am writing in response to your "SAVE SIRIUS" form letter to Gary Parsons, dated November 22, 2008, but only recently received, purporting to demand that the Board of Directors of Sirius XM Radio Inc. (the "Board") take certain actions.

      The Board takes its duties and responsibilities seriously, including specifically, in connection with the current proposal to shareholders.  The Board will consider your letter at its next meeting in early December and will provide a response thereafter.

Very truly yours,

*Patrick Donnelly*

Patrick L. Donnelly
Secretary

EXHIBIT D

# EXHIBIT  E

# SIRIUS XM
## RADIO INC.

1221 Avenue of the Americas
New York, NY  10020
Tel:  212-584-5100
Fax: 212-584-5200
www.sirius.com

December 16, 2008

Mr. Michael Hartleib
24892 Hollow Cr.
Laguna Niguel, CA  92677

Mr. Hartleib,

I write to follow up on my letter to you of December 5, 2008, which acknowledged your "SAVE SIRIUS" form letter purporting to demand that the Board of Directors of Sirius XM Radio Inc. (the "Board") take certain actions.

At its recent meeting, the Board reviewed and considered the issues you raised in your "Formal Letter of Demand," including your demand that the Board postpone the stockholder vote on certain proposals included in the Company's Proxy Statement dated November 4, 2008 that are to be considered at the Annual Meeting of Stockholders scheduled for December 18, 2008.  After consulting with its financial and legal advisors, the Board agreed that the Annual Meeting of Stockholders and stockholder vote should be held as scheduled.  The Board also confirmed its recommendation that stockholders vote in favor of the proposals contained in the Proxy Statement for the reasons stated therein.

Your various allegations of self interest and conflict of interest have been referred to and will be considered by the Nominating and Corporate Governance Committee of the Board.  Finally, the Board and the Compensation Committee of the Board took no action on compensation at its recent meeting.

Sincerely,

*Patrick Donnelly*

Patrick L. Donnelly
Secretary

EXHIBIT E

# EXHIBIT  **F**

SIMPSON THACHER & BARTLETT LLP

1999 AVENUE OF THE STARS, 29TH FLOOR
LOS ANGELES, CA 90067
(310) 407-7500

———

FACSIMILE: (310) 407-7502

DIRECT DIAL NUMBER
(310) 407-7557

E-MAIL ADDRESS
ckronenberg@stblaw.com

VIA EXPRESS MAIL

January 16, 2009

Re:    Demand to Inspect Books and Records

Michael Hartleib
P.O. Box 7078
Laguna Niguel, CA 92607

Dear Mr. Hartleib:

We write as counsel to Sirius XM Satellite Radio (the "Company") in response to your January 9, 2009 letter to the Company requesting certified copies of certain documents (the "Request Letter").[1]  The Request Letter indicates that it is made pursuant to Section 220 of the Delaware General Corporation Law.  However, the Request Letter fails to meet the requirements of Section 220 for a number of reasons, the most significant of which are set forth below.

First, your Request Letter does not establish a "proper purpose" for the inspection as required by Section 220.  According to the letter, the documents are being requested "for the benefit of Sirius XM Satellite Radio shareholders who have been and will continue to be damaged by the companies' current management."  Because you do not articulate the purpose of your inspection demand, we assume it relates to your present efforts to file an amended complaint against the Company in the United States District Court for the

---

[1]     The Company received the letter on January 14, 2009.

NEW YORK       PALO ALTO       WASHINGTON, D.C.       BEIJING       HONG KONG       LONDON       TOKYO

EXHIBIT E

SIMPSON THACHER & BARTLETT LLP

Michael Hartleib.                          -2-                          January 16, 2009

Central District of California.  However, as you are well aware, the Court has now twice

dismissed your allegations against the Company for lack of standing, and we do not believe

you will be able to cure this deficiency.  In this regard, courts in Delaware have held that

"[i]f a books and records demand is to investigate wrongdoing and the [shareholder's] sole

purpose is to pursue a derivative suit, the [shareholder] must have standing to pursue the

underlying suit to have a proper purpose." *West Coast Mgm't & Capital, LLC v. Carrier

Access Corp.*, 914 A.2d 636, 641 (Del. Ch. 2006).  In addition, as Vice Chancellor Strine of

the Delaware Chancery Court recently noted, it is "wholly unrealistic and burdensome" for a

stockholder "to believe that you can invoke compulsory litigation machinery . . . and then

turn around and use 220 [to obtain books and records].  It is a whipsaw on the company and

it's unduly burdensome, and it's a whipsaw on the processes of dispute resolution." *Parfi

Holding, AB v. Mirror Image Internet, Inc.*, C.A. No. 18457, tr. at 7 (Del. Ch. Mar. 23,

2001).

      Although investigating alleged wrongdoing may in some instances be a

"proper purpose" under the statute, "it must be to some end.  Delaware law does not permit

section 220 actions based on an ephemeral purpose . . . . [and a shareholder] must state a

reason for the purpose, *i.e.*, what it will do with the information, or an end to which that

investigation may lead." *Id.* at 646.  Your Request Letter fails to meet this standard.

Moreover, you have not presented a "credible basis" to support allegations that "waste or

mismanagement may have occurred," *Thomas & Betts Corp. v. Leviton Mfg. Co.*, 681 A.2d

1026, 1031 (Del. 1996), particularly in light of the fact that the Court did not find persuasive

SIMPSON THACHER & BARTLETT LLP

Michael Hartleib.                          -3-                          January 16, 2009

your allegations of self-dealing and conflict of interest in connection with your demand

futility claims.

        Second, it is well-settled that the shareholder "bears the burden of proving

that *each category* of books and records is *essential* to the accomplishment of the

stockholder's articulated purpose for the inspection." *Sec. First Corp. v. U.S. Die Casting &*

*Dev. Co.*, 687 A.2d 563, 569 (Del. 1997) (emphasis added).  The Request Letter fails to

demonstrate how each category of documents—particularly categories comprised of

privileged or otherwise confidential documents—is essential, especially given the letter's

lack of an articulated purpose.

        Finally, Section 220 requires a written inspection demand to be under oath,

*i.e.*, affirmed to be true under penalty of perjury under the laws of the United States or any

state.  The only statement you purport to affirm under penalty of perjury is that you are "and

have been a shareholder in Sirius Satellite Radio since November 5, 2003."  Leaving aside

the fact that you do not affirm under the laws of the United States or any state, a sworn

declaration concerning your stock ownership is insufficient to comply with Section 220.  In

addition, your demand was not "accompanied by documentary evidence of beneficial

ownership of the stock" as required by Section 220.

        Accordingly, the Company will not accede to the demands in the Request

Letter.

                                        Very truly yours,

                                        Chet A. Kronenberg